No. 19.—CALEB H. BLOOD, plaintiff in error, *vs.* JAMES E. MARTIN, defendant in error.

No. 20.—JAMES E. MARTIN, plaintiff in error, *vs.* CALEB H. BLOOD, defendant in error.

These two cases were consolidated and argued together.

A plaintiff in attachment was enjoined from selling the attached property. The levying officer, in his presence, sold a part of that property, he saying neither yea nor nay, in the matter. *Held,* That he violated the injunction.

In Equity, in Decatur Superior Court. Before ALLEN, Judge. May Term, 1356.

This was a bill filed by Caleb H. Blood against Elijah Johnson, James E. Martin, and others.

Complainant alleged, that about the last of the year 1854, he purchased from Johnson one half of his turpentine distillery, situated on the Chattahoochee river, in Decatur county, with all the fixtures and tools belonging thereto, together with the three acres of land on which said distillery was located, and that he and Johnson formed a partnership for the purpose of carrying on the turpentine business. That partnership commenced 1st January, 1855.

The bill charges various acts of negligence and mismanagement on the part of Johnson; that he was greatly embarrassed in his private business and appropriated large amounts of assets belonging to the company to the payment of his individual debts, and converted the property of the firm to his own use and benefit. That by such negligence, mismanagement and mal-appropriation, the business of the firm was greatly injured; its affairs embarrassed and damaged, and complainant would be involved in great loss. That he had made large advances to sustain and carry on the business, and that Johnson was insolvent.

The bill further charges, that on the 11th Feb., 1856, about forty attachments were issued from a Justice's Court against Johnson, and that they had been levied upon the land and personal property belonging to the partnership. That this had brought the operations of the firm to a close. That James E. Martin was the principal attaching creditor, who was proceeding to sell under the order of the Justice, various articles of property belonging to the partnership, and not subject to said levy and sale, and which were first liable for the partnership debts, and to complainant for his advances to and for the firm.

The bill prays for a dissolution, account, and the appointment of a receiver, and for an injunction to enjoin the sale under the attachments.

The Court appointed a receiver and granted the injunction which was duly served. But the constable under the order of the justice of the peace, in disregard and violation of the injunction, proceeded to sell so much of the property levied on, as was necessary to pay the *cost*. Martin was present at the sale, had a conference with the justice and constable; said publicly that he would have nothing to do with it, that they were the officers of the law and knew their duties, but did not prohibit the sale, or use any means to prevent it.

The amount of sale was $130. Upon application to the chancellor, he ordered a rule *nisi* to issue, against Martin, to show cause why he should not be fined and imprisoned for the violation of the injunction. Upon service of the rule on Martin, he appeared and filed his answer, upon the hearing of which, the Court considered it insufficient, and ordered him to pay a fine of $130, and that he be held in custody of the Sheriff until it was paid.

To this decision both parties excepted; Martin, because the fine or imprisonment imposed on him was contrary to law, as he had not violated the injunction; and complainant, because the order should have compelled a restitution, or at least have provided indemnity to him, which was not done by inflicting a *fine* upon defendant.

Afterward, defendant Martin put in his answer to the bill, and moved for a dissolution of the injunction: after argument, the Judge ordered the injunction to be dissolved, so far as relates to the individual property of Johnson, (enumerating it) and that if the receiver had sold any of said property, he pay the proceeds to James E. Martin, the plaintiff in the attachments.

To which decision and judgment, complainant's counsel excepted and assigns error.

---

Blood vs. Martin.

---

Lyon, for Blood.

B. Hill, for Martin.

*By the Court.*—Benning, J. delivering the opinion.

In this case there were exceptions taken on both sides.

On the side of the defendants, Martin excepted. He excepted both to the granting of the rule *nisi*, and to the granting of the rule absolute.

He says that, no foundation of evidence was laid for the rule *nisi* to rest on. He says that, no evidence of any sort had been laid before the Court on the question whether he had violated the injunction or not, at the time when the rule *nisi* was granted. This is his ground of exception to the granting of the rule *nisi*.

It is not clear that this ground is true in point of fact. All the evidence on the subject is what is contained in the recital to the rule *nisi* and in these words of the recital: "It being represented to the Court," &c.

A representation may be under oath. Therefore it is not a *necessary* inference from these words, that the representation to which it refers, was not under oath.

Slight evidence is sufficient to justify a judgment *nisi*.

There might have been, if there was not, strong evidence presented to the Court, to justify this judgment *nisi ;* for in the further progress of the case, it was shown that Martin *had* violated the injunction.

It is to be presumed therefore, we think, that the Court had before it sufficient evidence to authorize it to grant the rule *nisi*. Every presumption is to be made in favor of the judgment of a Court that has jurisdiction.

But if it be true, that the injunction had in fact been violated by Martin, it can be a matter of little or no practical importance, whether proof that it had been violated was presented to the Court or not, at the time when the Court granted the rule *nisi*.

Is it true, then, that the injunction had been violated?

The injunction was, that Martin should abstain from selling the property that had been seized under his attachments. A command to him to abstain, was a command to him to abstain not only by himself, but also by his agents.

The attaching officer was his agent, so far as to be bound to abstain from selling the attached property, if instructed to do so by him.

It appears from the answer of Martin himself, and also from other evidence, that the attaching officer sold a part of the attached property, that Martin was present at the sale; that he and the attaching officer were seen to consult together; that he did not direct the officer to abstain from selling the property; but said publicly, that he would have nothing to do with the matter; that the officer knew his duty.

Under such circumstances, the act of the officer in selling a part of the property, must be considered as the act of him, Martin. And if so, the act was a breach of the injunction. We think it was a breach of the injunction.

If Martin had told the officer not to sell the property, and the officer, disregarding the instruction, had of his own willfulness sold the property, the case might have been different.

So much for the exceptions on the side of the defendant.

Blood, the plaintiff, complains, that the judgment rendered by the Court against Martin, for violating the injunction, gave him, Blood, no redress. And, secondly, that the order of the Court dissolving the injunction, to some extent, was improper.

As to the first ground of complaint, we hardly think that the Court intended its judgment rendered for the violation of the injunction, to receive the construction which the counsel of Blood put upon it, viz.: a construction by which the sum of $130, which the judgment exacts of Martin, was to be paid to the *State* as a *fine*, rather than to the receiver of the property levied on, to stand in the place of the property from the sale of which, it had been raised. For unless the Court had intended the money to take the place of the property, it

is difficult to conceive why the Court should have set the sum to be paid by Martin, at $130, the precise sum raised from the sale of the property.

We merely say, therefore, in relation to this judgment, that it ought to be put in such a form, as not to leave it doubtful whether the money raised by the sale of the property, was to take the place of the property. We think it ought to be made to take the place of the property, and to be held by the receiver as the property would have been held.

As to the judgment dissolving the injunction. The attachments were levied on certain property that belonged to the partnership of E. Johnson & Co., and also on certain property that was the *separate* property of Johnson. The injunction commanded Martin to abstain from selling any of the attached property. The judgment was that so much of the injunction as restrained Martin from selling the *separate* property of Johnson, be dissolved.

And a dissolution of the injunction to this extent was manifestly right. Blood's mere partnership with Johnson could give him no rights by which he could prevent the sep arate creditors of Johnson from proceeding against Johnson, and Johnson's *separate* property.

Judgment modified.