## Case No. 11,101.

### PHILLIPS et al. v. DETROIT.

[2 Flip. 92; 3 Ban. & A. 150; 16 O. G. 627.] [1]

Circuit Court, E. D. Michigan. Nov. 6, 1877.

INJUNCTION—AGAINST MUNICIPAL CORPORATION—WHO BOUND—BOARD OF PUBLIC WORKS—PATENTS—INFRINGEMENT—WOODEN PAVEMENTS.

1. The members of the board of public works of a city are bound by an injunction against the city, of which they have notice, notwithstanding they are not parties to the suit nor the writ, and the same is not actually served upon them.

2. It is no excuse for the violation of a preliminary injunction in a patent case that the patent is invalid or the writ improvidently granted. If the court has jurisdiction to issue the writ it must be obeyed until it is dissolved.

[Cited in Roemer v. Newman, 19 Fed. 98; Bate Refrigerating Co. v. Gillett, 30 Fed. 685.]

3. A wooden pavement patented is infringed by the use of blocks cut from trees or saplings in their natural form, though a narrow segment is cut off from one side of each block.

4. Where a preliminary injunction in a patent case is violated the respondents will not be required to pay the patentee the amount of his royalty where they were acting in an official capacity, deriving no personal benefit from the infringement, especially if there be any reason to believe they acted in good faith.

[This was a bill in equity by Robert C. Phillips, Eugene Robinson, and Jesse H. Farwell against the city of Detroit to restrain the infringement of letters patent No. 121,544, granted to Phillips December 5, 1871, for improvement in wooden pavements. Heard on a charge of violation of a preliminary injunction.]

George H. Lothrop, for complainants.

D. C. Holbrook, for defendant.

BROWN, District Judge. The defense that the members of the board of public works were not parties to this bill, and were not served with the writ, was disposed of adversely to them upon the preliminary argument of this motion. We then held, and such we understand to be the law, that an injunction against a corporation is binding upon all persons acting for or on behalf of the corporation who have notice of the writ and of its contents, whether they be actually served with it or not. In Wellesley v. Earl of Mornington, 11 Beav. 180, 181, an injunction was issued against the defendant, but it did not extend in terms to "his servants and agents." A motion having been made to commit his agent for a breach of the injunction, it was held irregular; but it was afterward decided that if he had knowledge of the writ he might be committed for the contempt, although not for the breach of the injunction. See, also, People v. Sturtevant, 9 N. Y. 263, 267; Bank Com'rs v. City Bank of Buffalo [6 Paige, 497]; 1 Barb. Ch. Prac. 633; High,

Inj. §§ 853, 854, 862, 863; Safford v. People, 85 Ill. 558.

As respondents in the first allegation of their affidavit admit they had notice of the injunction, I think they are bound to obedience of the writ, and it only remains to determine whether they have been guilty of a violation. The authorities are full and conclusive to the point, and, indeed, it was admitted upon the argument that respondents were not entitled to claim in defense that the patent was invalid or the writ improvidently granted. People v. Sturtevant, 9 N. Y. 263; Sullivan v. Judah, 4 Paige, 444; Russell v. East Anglian Ry. Co., 1 Eng. Law & Eq. 101; High, Inj. § 873. The patent has been upheld by the decisions of at least two courts before the commencement of this suit, a fact which is, in ordinary cases, sufficient to authorize a preliminary injunction. If, in the meantime, respondents had become satisfied that it was invalid, the proper procedure was to make a showing of this fact and apply for a dissolution. If the court had jurisdiction to issue the writ, it should be obeyed until it is dissolved. I should feel no hesitation, however, in passing upon the validity of this patent, so far as any defenses may exist which were not brought to the attention of the circuit judge upon the original hearing.

Had respondents simply carried out the contracts made by them for paving the streets in question, I should have felt little difficulty in holding them innocent of any violation of this writ. The claim of the complainants' patent is in the following words: "What I do claim as my invention, and desire to secure by letters patent, is a wooden pavement composed of blocks of any desired wood, cut from the trunks or branches of trees or saplings, of any desired length, in their natural form, the bark only being removed, placed with their fibres vertical, upon a bed of broken stone and gravel or sand, or either of them, the spaces between the blocks being filled with gravel or sand, the whole made compact by ramming, rolling, or other proper method, as herein shown and described."

In his specification he says distinctly that he does not claim, broadly, the use of wooden blocks in the state in which they are cut from the tree or branches, nor the foundation of stone or gravel, nor the filling of the spaces between the blocks with sand or gravel, separately considered. In other words, he claims a combination, but not the separate elements of the combination.

A party may lawfully use wooden blocks in their natural form, or the foundation or filling of stone or gravel, but he cannot use them both without being guilty of an infringement. The specifications of the contracts made by respondents called for the use of "blocks, stripped of bark, of irregular or octagon shape, sawed from cedar timber," a material departure from the wooden

[1] [Reported by William Searcy Flippin, Esq., reprinted by Hubert A. Banning, Esq., and Henry Arden, Esq., and here republished by permission.]

blocks cut "in their natural form," as specified in complainants' claim. This was evidently the theory of the city counselor, who, in his affidavit, states that after the service of the injunction he advised the board of public works "that no more pavement which they had been laying, known as the round cedar-block pavement, could be laid while said injunction remained in force; that thereupon it was proposed to split and divide the round cedar blocks, and make them into irregular shapes, and not use the block in its natural form;" and that he advised the board that such use would not be an infringement of the complainants' patent; and the printed forms of contract which had been previously used, and which provided for blocks of a "round cylindrical shape," were changed so as to require the use of blocks of irregular and octagon shape.

The difficulty is, that while his advice was followed in making the contracts, it was disregarded in laying the pavements. The actual block laid was cut from the trunks and branches of trees or saplings in its natural form, precisely as is claimed in complainants' patent, except that a segment of from half an inch to one and a half inches in thickness was split from one side of each block. I regard this as plainly a subterfuge. The slicing off of this strip did not materially change the forms of the blocks, and was of no possible utility in laying the pavement. It was, perhaps, intended to be a compliance with the advice of the city counselor that the blocks must be split and used in an irregular shape in order to avoid the patent. But nothing is better settled in the law of patents than that identity is not affected by colorable differences, that regard is had to substance and not form, the inquiry being whether the infringing machine is the same in principle as that patented. Curt. Pat. 309; Seymour v. Osborne, 11 Wall. [78 U. S.] 516.

I do not think the affidavit of the respondents exonerates them from a participation in this infringement. They swear that the inspectors were instructed by them that the blocks must not be used nor laid in their natural form; that such blocks must be split and their form made irregular, and that no round block in its natural form must be accepted, and that the patent of complainants must not be infringed; that whenever they discovered blocks in the natural form being used they ordered them taken up; and that if any pavement was laid in violation of the injunction, it was so laid contrary to their directions.

It is, however, the duty of the board of public works to supervise the grading and paving of all streets. 3 Sess. Laws 1873, p. 178, § 8. In their affidavit they admit they reported to the common council that the contracts had been performed and the work accepted, but claim they did so upon the report of the inspectors having charge of the work that the same was done according to

the several contracts therefor, and that if the contractors laid the pavement in such manner as to violate the injunction, it was done without their knowledge, and that the acceptance of such pavement was not a violation on their part of the injunction, when the same was laid without their knowledge and consent. But their affidavit is not inconsistent with a knowledge upon their part that the only alteration of the wooden blocks consisted in splitting off the strip, as above specified. This was a nominal compliance with their instruction not to use the block in its natural form, but to split it, and possibly they may have considered that this was sufficient to avoid the patent; but if they accepted anything less than the literal performance of the contract, requiring the blocks to be cut in an irregular or octagon shape, they did so at the peril of violating this injunction.

In view of their duties, in connection with the paving of the public streets, to supervise the work and to report the completion of the contract to the council, and also in view of the fact that in the performance of these duties they could scarcely have been ignorant of the manner in which these pavements were being laid, I must hold them chargeable with knowledge of and participation in the violation of this injunction committed, in the use of this evasive block. To render them liable it is not necessary they should have actually committed the breach in person; but if they were present, aiding and abetting the commission of the act, prompted it to be done by other persons, or, having charge of a public work like this, permitted their contractors to depart from the letter of the contract, and accepted the report of the inspectors with approval of work so done, they are liable for an infringement and guilty of disobedience to the writ. High, Inj. § 861; Blood v. Martin, 21 Ga. 127; Stimpson v. Putnam, 41 Vt. 238; St. John's College v. Carter, 4 Mylne & C. 497. Even if the city counselor had advised the use of this particular block, (which he does not seem to have done,) or respondents had acted conscientiously and in good faith, it would be no justification, though the court might consider these facts in fixing the penalty. High, Inj. §§ 849, 851.

I do not regard the fact that the complainants, Farwell & Robinson, may have been interested in paving certain streets, as estopping them from setting up a violation of the injunction by respondents in paving other streets. They would undoubtedly have a right to take a contract directly for the paving of Woodward avenue, for instance, without thereby assenting that other parties should pave Jefferson avenue with their pavement. Indeed, the very object of this, as of all other patents, is to enable the patentee to maintain a monopoly of laying his pavement during the life of the patent. The estoppel would extend no farther than to

prevent them claiming an infringement in respect to the particular streets which they were interested in paving. They make no claim for either of these streets.

Complainants' counsel insists with great earnestness that, instead of imposing a fine upon respondents for a violation of this injunction, the court should require them to pay to complainants a sum sufficient to indemnify them for the actual loss or injury that has been produced by the infringement, viz.: their usual royalty of sixteen cents per square yard. Without determining whether the court has power to make this order in the absence of a statute to that effect, (although the authorities would seem to sustain complainants' view upon this point,) it is clearly a matter of discretion. I think the penalty should not be imposed in this case, for the following reasons:

1. While the violation of the injunction was willful in the eye of the law—i. e., intentional—it was not willful in any odious acceptation of the term. The respondents were acting in an official capacity in the discharge of a public duty, and derived no personal benefit whatever from the infringement. They may possibly have believed that they were following the advice of the city counselor, and were not, in fact, violating the injunction.

2. The complainants will derive no benefit from the immediate payment of the royalty. The city is amply responsible for any decree they may finally recover, and interest will follow upon the ascertainment of the amount.

3. If this order were made respondents would be obliged to pay sixteen cents per yard royalty upon eighteen thousand three hundred and twenty-nine yards of pavement already laid, and fifteen thousand one hundred and eighty-one yards contracted for but not laid, making thirty-three thousand five hundred and ten yards, at sixteen cents, $5,361.60. This sum would have to be paid by the respondents personally, with no definite assurance that they would be reimbursed by the city. It seems entirely clear that complainants should not call upon this court to order the payment of this large amount.

4. The patent may in the end be held invalid, in which case the complainants will have received a large amount of money to which they were not justly entitled, and the city be driven to long and doubtful litigation to recover it back. I find no patent case where this course has been pursued for violation of a preliminary injunction.

Respondents, however, being guilty of a violation of this injunction, will be required to pay a fine of fifty dollars each, together with the costs of this motion, and a counsel fee of fifty dollars, and to stand committed till the terms of this order are complied with.

NOTE. Subsequent to this decision Judge Brown ruled that the patent issued to Robert C. Phillips, No. 121,544, was void for want of novelty and invention. [Case No. 11,100.] Judge Emmons had sustained the validity of this patent in a suit brought by complainants against the city of Cincinnati. There were produced before the first named judge, as he states, three most important exhibits, which claimed to be in anticipation of complainants' patent, and that were not before Judge Emmons.

[An appeal was taken to the supreme court, where the decree rendered in Case No. 11,100 was affirmed. 111 U. S. 604, 4 Sup. Ct. 580.]