# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## OCTOBER TERM, 1915.

---

### DUNN, commissioner, *et al. v.* HARRIS *et al.*

On an application for an injunction to restrain certain county commissioners and their clerk from levying a special tax to build a court-house, a rule nisi was granted and a restraining order passed, enjoining them until the hearing as prayed. On the hearing of an application for an attachment for violating the restraining order, the plaintiffs introduced no evidence except the publication, in three issues of a newspaper (on August 26 and September 2 and 9, 1915), of a copy of an order of the county commissioners levying county taxes, including a tax for building a court-house. The defendants by their sworn answer alleged that the commissioners had "levied the tax," had "advertised same," and had adjourned and gone to their respective homes before they had any knowledge of the restraining order; and that they levied the tax before they had any knowledge that the petition had been presented to the court; and they also showed by the evidence of the clerk that the order levying the tax (dated August 20) had been entered on their minutes, and that a copy had been posted at the court-house door, and another copy mailed to the tax-collector, and still another delivered to the newspaper for publication, before he had any notice of the grant of the restraining order (it having been granted on the same day when the commissioners met, at a place about forty miles distant from that where the meeting was held, and not having been served on any of the defendants until the next day after its passage and on one or more of them two days later). They also denied any intention to violate or defy the restraining order. The court adjudged all of the defendants to be in contempt, provided that they might purge themselves of the contempt by discontinuing and withdrawing instanter the special tax levy for the building of a court-house, and the publication thereof in the newspaper and paying the costs of the proceeding. It was further ordered that, on failure to do

this, the defendants should be confined in the common jail until further order. *Held*, that such judgment was erroneous.

OCTOBER 13, 1915.

Attachment for contempt. Before Judge Fite. Murray superior court. September 11, 1915.

Six persons, as citizens and taxpayers of Murray county, filed their equitable petition against D. R. Dunn, T. M. Hemphill, and J. A. McGhee, as members of the board of commissioners of roads and revenues of that county, and J. M. Sellers, clerk of the board. For certain reasons they alleged that it would be illegal to levy a tax to build "or hull in" a court-house for the county in the town of Chatsworth. They also urged that the commissioners had issued warrants to Sellers for fees for services in the case of Beck against the board of commissioners (decided in the Supreme Court on September. 22, 1915) and another case, which payments it was claimed would be illegal. They prayed, "that the board of commissioners (naming them) be enjoined from levying the tax herein mentioned;" that they be enjoined from paying fees to Sellers from the county funds in this or any other case involving the levying or collecting of any tax for the building of a court-house under the proceeding described; and that process issue. On August 20, 1915, at Cartersville, Georgia, the judge of the Cherokee circuit granted a rule nisi, calling upon the defendants to show cause before him, on September 4, why the prayers of the petition should not be granted. The order then proceeded: "It is further ordered that in the meantime and until the hearing the defendants be and they are enjoined as prayed." Subsequently there was presented to the judge a petition by the plaintiffs in the equitable proceeding, which recited the granting of the order restraining the commissioners and Sellers "from levying a special tax to build a court-house in said county," and from paying fees to Sellers out of the funds of the county; that the sheriff of Murray county served the defendants personally, on the 21st and 23d of August respectively, with a copy of the restraining order, based on the equitable petition, which was filed on August 21; and that "the defendants wantonly and defiantly disregarded and disobeyed said order of said court by levying and advertising said levy and rate." They therefore prayed that an attachment nisi should issue. Upon this proceeding, on September 4, the judge issued an order requiring the defendants to show cause, on September 11, why they should not be

attached for contempt. They demurred to the petition for the attachment, and also answered substantially as follows (omitting any reference to the employment of Sellers, which is not referred to in the petition or rule nisi) : The restraining order was granted on August 20, at chambers at Cartersville, which is about forty miles from the place where the commissioners held their meeting. They levied the tax mentioned above, before they had any knowledge whatever of the restraining order having been granted, and before they had any knowledge that the equitable petition had been presented to the court. Neither the petition, nor its prayers, nor the order of the court made any mention of the advertising of the levy. They had levied the tax, advertised it, closed "their court," and had gone to their respective homes before they had any knowledge of any restraining order in regard to the matter. They denied any intention to violate or defy the order of the court. The answer was verified.

On the hearing of the application for an attachment the plaintiffs introduced no evidence except the advertisement of the tax levy, which appeared in the Chatsworth Times on August 26, September 2, and September 9. Defendants introduced the order for the tax levy passed by the board on August 20. They also introduced the affidavit of Sellers, in substance as follows : The order of the commissioners levying the taxes was passed on August 20, entered on the minutes of the commissioners, a copy delivered to the Chatsworth Times, a copy posted before the court-house door, and a copy mailed to the tax-collector, before the deponent had any notice whatever of an order having been granted by the superior court to restrain the commissioners from making such levy.

The court granted the following order: "Upon consideration of the foregoing petition and answer thereto, it is considered, ordered, and adjudged that the defendants are each in contempt of this court, but that they and each of them may purge themselves of contempt by discontinuing and withdrawing instanter the special tax levy for the building of a court-house in Chatsworth, Murray county, and the publication thereof in the Chatsworth Times, and paying the costs of this proceeding. And it is further ordered that, upon failure to comply with the foregoing order, they and each of them be confined in the common jail of Murray county until the further order of this court. This September 11th, 1915." The defendants excepted.

*Tye, Peeples & Jordan* and *J. M. Sellers,* for plaintiffs in error.

*J. J. Bates, H. H. Anderson,* and *Walter McElreath,* contra.

LUMPKIN, J. (After stating the facts.) The power of the superior court to prevent disobedience of its injunctions is an important one. A temporary restraining order granted, to remain of force until the hearing of the application for an interlocutory injunction, has all the force of an injunction until rescinded or modified by the court. Civil Code (1910), § 5501. If the court has· jurisdiction of the person and subject-matter, and grants an injunction, the person enjoined can not justify a violation of it on the ground that it was erroneously or improvidently granted. A motion to have the injunction revoked or modified, or a writ of error (in a case where such writ may be had), is the remedy, if a party enjoined thinks that the injunctive order was erroneously granted. *Russell* v. *Mohr-Weil Lumber Co.,* 102 *Ga.* 563 (29 S. E. 271). The circumstances, the nature of the order granted, and the good faith of the parties may be considered in connection with the penalty to be imposed, if there has been a violation of the injunctive order. *Ibid.* A defendant who is enjoined from doing a particular act can not with impunity evade the force of the injunction by permitting the act enjoined to be done by his agents, or in his presence with his acquiescence. *Blood* v. *Martin,* 21 *Ga.* 127.

Thus much is said that there may be no misapprehension as to the fact that a superior court has power to enforce its injunctive order, and that persons enjoined, whether private individuals or administrative officers, must in good faith obey such an injunction until it has been modified or reversed or has become inoperative. At the same time, attachment for contempt in violating such an order is a summary remedy which may affect the liberty of the citizen, and care should be taken in its use. It has been said that, in order to punish for a violation of an injunction, the order should clearly embrace the act complained of. German Savings Bank *v.* Habel, 58 How. Pr. (N. Y.) 336. In one case a complainant, claiming to be in possession of certain premises, obtained· a preliminary injunction against the defendant, enjoining him from certain trespasses, and also from interfering with or meddling with the possession of or entering upon the premises. But in fact the defendant, not the plaintiff, was in possession, and upon the plain-

tiff's entry the defendant kept him out by force. It was held that this was no violation of the injunction, and that the defendant was not in contempt, the purpose of the injunction being to protect the plaintiff's possession, not to oust the defendant and put the plaintiff in possession. People v. Simonson, 10 Mich. 335. In another case a complaint showed that the defendant city and its employees were interfering, by physical force, with the construction of a bridge by the plaintiff. A commissioner, having authority in the State where the litigation was, ordered the defendant to show cause before a circuit judge why the injunction should not issue, and also granted a temporary restraining order requiring that the defendants desist and refrain from in any way or manner interfering with the construction of the bridge, or from cutting the piles there being driven, etc. On the next day the city attorney presented an answer, made a counter-claim for an injunction to restrain the erection of the bridge, and obtained from the commissioner an order for the plaintiff to show cause before the same judge, and a temporary order restraining the plaintiff in the meantime from building the bridge. It was held that the first order must be understood as restraining the defendants only from forcibly interfering with the construction of the bridge, and that, although the obtaining by the city attorney of the second restraining order did interfere with the building of the bridge, it was not within the scope of the first restraining order, properly construed, and the city attorney was not in contempt. Wisconsin Central R. Co. v. Smith, 52 Wis. 140 (8 N. W. 613).

Let us now consider what transpired in the case before us. The petition alleged that the defendants were proceeding to levy a tax to build or "hull in" the court-house, and that it would be illegal to levy such a tax, for certain reasons. The prayer, so far as it affects the present case, was that "the board of commissioners [naming them] be enjoined from levying the tax herein mentioned." The judge of the circuit passed an order requiring the defendants to show cause why the injunction should not be granted, and ordered "that in the meantime, and until the hearing, the defendants be and they are enjoined as prayed." It will thus be seen that the restraining order, so far as material, was only to enjoin the commissioners from levying the tax mentioned. The petition for attachment alleged that the defendants had disregarded and

disobeyed the restraining order by levying and advertising the levy and rate. On the hearing the sworn answer of the defendants was to the effect that the restraining order was granted on August 20, 1915, at Cartersville, about forty miles distant from the place at which the commissioners met; that they had levied the tax, had advertised it, had adjourned their meeting, and had gone to their respective homes, before they had any knowledge of the issuing of the restraining order; and that they did not even know that the petition for a restraining order had been presented to the court until after the tax had been levied. They denied any intention to violate the order of the court or to act in defiance thereof. Sellers, one of the defendants, who was also the clerk of the board and had represented the board as an attorney, made an affidavit to the effect that the order levying the taxes, including a tax for the erection of a court-house, was passed on August 20, that the levies were made, entered on the minutes of the commissioners, a copy delivered to the Chatsworth Times (a newspaper published at the county seat), another copy posted before the court-house door, and another mailed to the tax-collector, before he had any notice whatever that an order had been granted restraining the commissioners from making the levy. As to these facts there was no conflicting evidence. Indeed, the only evidence introduced on behalf of the petitioners for the attachment was the advertisement of the tax levies, which appeared in the Chatsworth Times on August 26, September 2, and September 9. Thus we have an order to restrain the levying of a tax, and a sworn answer, and uncontradicted evidence that the tax had been levied, entered on the minutes, and copies furnished to the newspaper, posted at the court-house door, and mailed to the tax-collector before the defendants had notice that the restraining order had been granted.

The word "levy" is not always used with the same meaning. As applied to taxes, it sometimes has been used as meaning to raise and exact by authority of government, or to determine by vote the amount of tax to be raised. In some cases the word has been used with reference to the ministerial or executive act of entering taxes on the books and collecting them. There is, however, a difference between the levying of a tax and its assessment or collection. In Emeric *v.* Alvarado, 64 Cal. 529 (2 Pac. 418), it was said that "levying a tax" usually means the fixing of the rate at which prop-

erty is to be taxed, and that this is generally done by the legislature, either mediately or immediately; that is to say, by the legislature for the purpose of State taxation, and by the local governing boards, such as boards of supervisors, for local taxation, on which boards the power of levying taxation is conferred by the legislature. In Perry County v. Selma etc. R. Co., 58 Ala. 546, 559, it was said: "Levy and assessment have very different meanings. The levy of taxes is a legislative function, and declares the subjects and rate of taxation. . . Assessment is quasi judicial, and consists in making out a list of the taxpayer's taxable property, and fixing its valuation or appraisement. . . The distinction is the difference between prescribing a rule of action and administering that rule to persons and subjects that fall within its provisions." See also 37 Cyc. 964, 965. While in this State the distinction may not always have been accurately observed in the unguarded use of words, yet it is recognized. The ordinaries, or commissioners of roads and revenues, as the case may be, levy the county taxes by order. Civil Code (1910), §§ 504, 505, 506, 510. In section 514, the word "assessed" is once used instead of "levied." It is there provided: "As soon as the county tax is assessed for the year, it shall be done by order of such ordinaries and entered on their minutes, which must specify the per cent. levied for each specific purpose." Section 515 provides: "The ordinaries must advertise immediately a copy of such order for thirty days at the door of the court-house and in a public gazette, if one is published within the limits of their respective counties, and furnish the tax-collector with another copy." Section 517 declares: "All taxes levied for county purposes must be assessed upon the tax-receiver's books for each year, and collected by the tax-collector, who shall pay the same to the county treasurer." In Gilbert v. County of Dougherty, 53 Ga. 191, it was held that the order of the ordinary, levying a tax, was the highest and best evidence of his intention as to the amount thereof. It will be seen that, under the statutes of this State, county taxes are levied by means of an order of the ordinary, or county commissioners where they exist for the purpose of conducting county affairs. Whether the requirement of section 515 that ordinaries must immediately advertise a copy of the order levying county taxes for thirty days at the door of the court-house and in a public gazette, if one is published in the county, and furnish the tax-

collector with a copy, be deemed mandatory or directory, or partly one and partly the other, the advertising in the public gazette follows the passing of the order and the entry of it on the minutes, and gives notice to the public of the levy which has been made. In *Garrison* v. *Perkins*, 137 *Ga.* 744 (74 S. E. 541), Mr. Justice Beck said that the provision for advertising in a public gazette might be treated as directory, though it should be complied with.

The restraining order, as has been stated above, referred only to the levying of the tax. It did not expressly cover the giving of notice of the levy after it had been made, or the collection of the tax by the tax-collector. It did not appear that the defendants did any affirmative act in regard to the matter of a tax levy after notice of the restraining order. The facts are not like those in *Blood* v. *Martin*, 21 *Ga.* 127, supra, and similar cases, where the defendant was present when the act which had been enjoined was done, and made no effort to prevent it. The only complaint made here is that the newspaper published the notice after the defendants were served with the restraining order, and it does not appear that they made any effort to stop the publication. In their sworn answer they stated that they had made the levy and advertised it before receiving notice of the restraining order, and disclaimed any intention of violating or defying the order of the court. There was no evidence tending to show that they acted contumaciously, or with intention to violate the restraining order. They might well have understood that it was only intended to prevent them from passing the order levying the tax and placing it upon their minutes; and that when this was done before notice of the restraining order, they were not required to go to the newspaper office and withdraw the advertisement.

The order of the court adjudged the defendants to be in contempt, but directed that they and each of them might purge themselves of such contempt by discontinuing and withdrawing instanter the special tax levy and the publication thereof in the Chatsworth Times, and paying the costs of the proceeding. It was further ordered that, upon failure to comply with this order, each of the defendants should be confined in the common jail of Murray county until further order of the court. This order on its face seems to recognize the difference between the tax levy and the publication thereof in the newspaper. If the order levying the tax had been

passed and entered on the minutes before the defendants had any notice of the grant of the restraining order, we do not think that the court could hold such action to be a contempt, and require the commissioners to reassemble and pass another order withdrawing the levy, on pain of being confined in jail; nor should he have coupled such a withdrawal of the special tax levy with a withdrawal of the advertisement, and have provided that on failure to do both acts the defendants should be confined in the common jail until further order of the court.

Further, we see no evidence which authorized the holding of Sellers in contempt. He was not a commissioner, and had no authority to revoke the tax levy and withdraw the publication, if he had so desired. There is nothing to show that he advised the commissioners to violate the order of the court, or did anything tending to that end after knowledge of the restraining order. No question as to his fees is involved in the present proceeding. Upon the whole, after careful consideration, we are constrained to think that the trial court erred in the judgment which he rendered.

Two amendments were made to the petition for injunction after the restraining order was granted; but they do not affect the ruling above made.

The case of *Dunn* v. *Beck,* ante, 148 (86 S. E. 385), arose under a former equitable petition to restrain the board of commissioners from erecting the court-house according to certain plans and specifications. The equitable petition under which this contempt proceeding arose was filed later.

*Judgment reversed. All the Justices concur.*