*McMillan & Erwin, R. E. A. Hamby,* and *W. S. Paris,* contra.

---

## McGREGOR *v.* HOGAN, sheriff, *et al.*

1. Section 6 of the act of 1913 (Acts 1913, p. 123) known as the tax-equalization act, provides that where, in the opinion of the board of county tax assessors, any taxpayer has omitted from his returns any property that should be returned, or has failed to return any of his property at a just and fair valuation, the board shall correct said return and shall assess and fix the just and fair valuation to be placed on the property and shall make a note thereof and attach the same to the returns. It is also the duty of the board, when any corrections. changes, and equalizations shall be made by the board, to immediately give notice to any taxpayer of any changes made in his returns in the manner specified in the act; and if the taxpayer is dissatisfied with the action of the board, he may, within ten days from the giving of the notice, in case of residence, and within twenty days in case of non-

residence in the county, give notice to the board that he demands an arbitration, giving at the same time the name of his arbitrator; the board shall name its arbitrator within three days thereafter; and these two shall select a third, a majority of whom shall fix the assessment on the property on which the taxpayer shall be taxed, and the decision of the arbitrators shall be final, etc. *Held,* that the provision in section 6 of the act of 1913, providing for notice to .the taxpayer and his right to arbitration, affords him due process of law, and this section of the act in and of itself is not violative of the due-process clauses of the State and Federal constitutions.

(*a*) A taxpayer whose property has been given in by himself for taxation, which has been raised in amount by the tax-assessors of the county, who notify the taxpayer as required by the act, and who fails to ask for an arbitration as therein provided, is not deprived of due process of law under the State and Federal constitutions.

(*b*) In a case where the taxpayer has asked for arbitration, and arbitrators have been appointed and they fail to agree on an award within the ten days provided by the statute, the question as to whether such effort at arbitration would deny the taxpayer due process of law is not raised under the facts of this case.

2. Under art. 7, sec. 6, par. 2, of the constitution of the State, the objects for which taxation may be levied by a county are enumerated, but there is no limitation in the constitution upon the taxing power of a county in regard to the amounts to be levied for these authorized purposes; the amount to be levied for each purpose is under legislative control.

3. Under §§ 514 and 515 of the Civil Code of 1910, the ordinaries, or other county authorities having the duty of assessing the county tax for each year are directed to levy and assess such taxes by order and enter the same on their minutes, which must specify the per cent. levied for each specific purpose, and to advertise immediately a copy of such order for thirty days at the door of the court-house and in a public gazette. Such provision with reference to advertising the copy of the order is directory and not mandatory, and a failure to comply with such provision will not render the tax levy and assessment void.

No. 2743. MAY 19, 1922.

Petition for injunction. Before Judge Shurley. Warren superior court. June 28, 1921.

C. E. McGregor, for himself and on behalf of such other taxpayers of Warren County as were similarly situated, filed an equitable petition against C. P. Hogan, the sheriff of Warren County, J. T. Scruggs, the tax-collector of Warren County, D. E. Johnson, the sole commissioner of roads and revenues of Warren County, and C. A. Wheeler, H. F. Norris, and S. A. Ray, composing the county board of tax-assessors of Warren County, praying that the sheriff of Warren County be enjoined from levying a certain tax execution issued against him upon any of

his property, and from proceeding further with the tax execution in an effort to collect the same; and that the assessment made by the tax-assessors of Warren County be declared null and void, etc.

From the record it appears that C. E. McGregor returned for taxation for the year 1920, in Warren County, 2907 acres of land at a valuation of $12,500. The board of tax-assessors of that county, without giving the plaintiff any previous notice, raised the valuation of the 2907 acres of land to the sum of $23,256; and it was alleged that the increased assessment was more than the true market value of the land. Plaintiff was not given any notice or opportunity to appear before the board of tax-assessors to object to or protest against the increased assessment before it was made. It was also alleged, that the action of the board of tax-assessors was not done in obedience to any order of the State tax commissioner, but was executed by the tax-assessors in conformity and by virtue of the Georgia tax-equalization act (Laws of 1913, p. 123 et seq., and as contained in §§ 1116 (g), (h), (i), (j), (k), (l), (m), (n), (o), (p), inclusive, of Park's Annotated Code of Georgia); that the Georgia tax-equalization act, as contained in section 6 thereof, is unconstitutional in that it fails to provide for a notice and hearing before the tax-assessors and before the increased assessment is made upon the property of plaintiff, and is violative of the due-process clauses of both the State and Federal constitutions; that the increased assessment placed upon plaintiff's property was illegal in that it was confiscatory; and that sometime during the year 1920 the commissioner of roads and revenues of Warren County did assess and levy the rate of taxes for the year 1920, as follows: "$16.00 per $1000 on $3,476,074, which will net $55,616." It was alleged that such levy was void: (a) Because the county commissioner did not enter the same upon the minute-book, and because the commissioner did not keep any minute-book of his acts and doings. (b) Because it failed to specify the per cent. levied for each specific purpose as enumerated under § 513 of Park's Annotated Code of Georgia, as required by § 514 of the Code of 1910, which provides as follows: "As soon as the county tax is assessed for the year, it shall be done by order of said ordinaries and entered on their minutes, which must specify the per cent. levied for each specific purpose. The assessment applies to every species of value or specifics which is taxed by the State."

(*c*) Because the rate the commissioner attempted to assess for the year 1920 was more than 100 per cent. of the State tax of 5 mills, and .4 of one per cent. to work the roads and repair the bridges in the county for the year 1920. (*d*) Because the tax levy was not advertised before the court-house door for any length of time, nor was it published in any newspaper, as required by law. (*e*) Because the County of Warren had adopted the alternative road law as contained in §§ 694-704 of the Code of 1910, and the same had not been repealed or abolished; which law was binding upon the county commissioner during the year 1920, and under which law the public roads of Warren County were established, worked, and maintained during the year 1920.

All of the defendants filed answers, admitting certain paragraphs of the petition and denying others; but the defendant D. E. Johnson, who was the sole county commissioner, averred specially as follows: As to the allegation that the return of the 2907 acres of land for $12,500 was at its true market value, for want of information he could neither admit nor deny. He admitted the allegation in paragraph 7, that the county tax-assessors did, without notice to the plaintiff and without his previous knowledge, increase the valuation upon the 2907 acres of land to $23,256, but denied that this was more than the true market value of the land. Answering further he says, that the county tax assessors did, within the time required by law, after they had raised the tax assessment, make a note of the same and attached it to the plaintiff's return, and immediately notified him personally of the change and increase in his return. He admitted the allegations in paragraph 8 of the petition, but averred that the plaintiff was notified by the assessors of the raise in his return after the same was made, and that this notice complied fully with the statute in such cases. Answering paragraph 9, defendant averred that the State tax commissioner did not order any per centum increase in the tax returns of Warren County, but did order the county tax assessors to increase the tax returns of such individual citizens of the county as in their judgment were too low. He denied the allegation in paragraph 10, and averred that the Georgia tax-equalization act is not constitutional for the reasons alleged in that paragraph, nor is it violative of the fourteenth amendment of the constitution of the United States.

It was admitted in this defendant's answer that the tax levy of the commissioner of Warren County, set out in paragraph 12 of the petition, is defective; but defendant prayed the court to permit him to amend such tax levy of 1920 so as to perfect and make it legal, the amendment to be in substance as set out in an exhibit attached to the answer. He also averred, that " after the act of September 19, 1908, providing for the employment of felony and misdemeanor convicts upon the public roads of the several counties of the State, etc., Warren County through its board of commissioners applied to the Prison Commission of the State of Georgia for its quota of male felony convicts; and that said convicts were apportioned by the Prison Commission of Georgia to Warren County, if not its full quota, at least a large number of them; that while the grand jury of Warren County had, several years prior to 1908, recommended that the alternative road law be put into operation in Warren County, after the act of September 19, 1908, went into effect and Warren County received and continued to receive its quota of convicts, little, if any, attention was paid to the alternative road law, and certainly no tax was ever levied by the commissioners as authorized by section 696 of the Civil Code for the purpose of working the roads of Warren County under the alternative road law, nor was such a tax levied in 1920, but the commissioner worked the roads entirely by convict labor, the county's quota of felony convicts received from the Prison Commission, and misdemeanor convicts; that on August 18, 1919, the board of commissioners of Warren County was abolished, and an act was passed creating a commissioner of roads and revenues of Warren County (Acts 1919, p. 773); that section 9 of said act provides: " That the commissioner of roads and revenues of Warren County shall have authority to equip and maintain a chain-gang in and for said County of Warren, according to the law of said State, for the purpose of working on and building roads and bridges for said County."

The case was submitted to the court, after evidence introduced by the plaintiff in support of the allegations of his petition and amendment thereto, and the defendants introduced evidence tending to support their answers and amendment; and after argument the presiding judge rendered the following judgment: " 1st. That the injunction prayed for in said petition, on the con-

stitutional grounds therein alleged and all other grounds, except as against the tax levy for 1920, and the tax fi. fa. issued thereon against the plaintiff, is hereby denied. 2nd. The injunction as prayed against the tax levy of the commissioner of Warren County for the year 1920 is hereby granted; and the court being of the opinion that the tax fi. fa. in the hands of G. P. Hogan, sheriff of said county, sought to be enjoined, having been issued when there was no legal tax levy for the county for the year 1920, the said G. P. Hogan, sheriff of said county, should also be enjoined from proceeding to levy or collecting said tax fi. fa. It is further ordered, considered, and adjudged that the said D. E. Johnson, commissioner, and the said G. P. Hogan, sheriff, be and they are hereby enjoined from collecting said tax fi. fa. now in the hands of G. P. Hogan, sheriff, and which is sought to be enjoined by petitioner. 3rd. It is further ordered that D. E. Johnson, commissioner, be permitted, and he is hereby permitted and ordered, to amend the tax levy for the year 1920, in the manner he prays to do in his answer and in accordance with the proposed amendment set out and attached to his answer, and that said tax levy as amended be by him placed on the minutes of the commissioner of Warren County, Georgia, and published as provided by law. 4th. It is further ordered that after the said D. E. Johnson, commissioner, has amended the tax levy for the year 1920, in accordance with his prayer as set out in his answer, that the tax-collector of Warren County, John T. Scruggs, issue a new fi. fa. based on said levy as amended. When the said D. E. Johnson, commissioner, has amended the tax levy for the year 1920, in accordance with his prayer as set out in his answer, and in accordance with the proposed amendment of said tax levy attached to his answer, and the same is placed on the minutes of said commissioner, and the tax-collector, John T. Scruggs, has issued a new fi. fa. based on the said tax levy as amended, as herein ordered, then the said commissioner and sheriff are hereby authorized to proceed and collect said taxes due for the year 1920, under and by virtue of the new tax fi. fa., unrestrained and unhampered by the injunction this day granted, restraining and enjoining the collection of the taxes due by plaintiff under and by virtue of the fi. fa. issued on the — day of ——,1921, under the original tax levy for Warren County, Georgia, for the year 1921; it being the intention of this

order to restrain said commissioner and sheriff from further proceeding under the fi. fa. now issued." To this order the plaintiff excepted.

*L. D. McGregor,* for plaintiff.

*E. P. & J. Cecil Davis,* for defendants.

HILL, J. (After stating the foregoing facts.)

1. The first ground of exception to the opinion holding in effect that section 6 of the tax-equalization act of the State of Georgia (Acts 1913, p. 123 et seq.) is not unconstitutional and void as offending both the State and Federal constitutions, which provide for due process of law, is that section 6 of the act does not provide for any notice to the taxpayer before the assessment is made by the tax-assessors, and that opportunity is not given to the taxpayer to be heard as of right before the assessment becomes final against him. It is insisted that as applied to the facts of this case the plaintiff is denied due process of law as guaranteed to him by the fourteenth amendment of the constitution of the United States, and by art. 1, sec. 1, par. 3, of the constitution of the State of Georgia. Paragraph 6 of the act of 1913 has been declared constitutional by this court several times. The first case in which it was held not to be obnoxious to the due-process clauses of the State and United States constitutions was *Vestel* v. *Edwards,* 143 *Ga.* 368 (85 S. E. 187). In that case it was held: " An act of the legislature, which has for its object the equalization of taxation by means of a just and fair assessment of property returned for taxation, and which provides for notice to any taxpayer whose returns have been increased, and that if he is dissatisfied with the action of the county board of tax-assessors in assessing the value of his property for taxation he may demand an arbitration of the question of the valuation of the property returned for taxation, and which provides that in case of disagreement as to the selection of an umpire the ordinary or the county commissioners, as the case may be, shall appoint one, and the arbitrators shall render their decision within ten days from the date of the naming of the arbitrator by the board, is not repugnant to the due-process clause of the constitution of the United States, as contained in the fourteenth amendment. (*a*) Nor is it obnoxious to the due-process clause of the constitution of the State of Georgia. (*b*) Nor does it deprive the taxpayer of the equal

protection of the laws." In the body of the opinion it was said: " It has been held that in the matter of taxation due process of law does not require a judicial procedure. And this ruling of the courts was both before and since the adoption of the fourteenth amendment to the constitution of the United States. Judson on Taxation [1st ed.], § 318 [2nd ed. § 340]. And this ruling is based on the ground that revenues must be collected without delay, and can not await the decision of a common-law trial. Of necessity the sovereign must proceed in a somewhat summary way to collect taxes. Ibid. And while notice can not be dispensed with in cases where the tax is dependent on valuation of the property, and is not specific, the legislature may prescribe the kind of notice and the manner in which it shall be given. Judson on Taxation, § 321. See Turpin *v.* Lemon, 187 U. S. 51 (23 Sup. Ct. 20, 47 L. ed. 70). In Pittsburg &c. Ry. Co. *v.* Backus, 154 U. S. 421 (14 Sup. Ct. 1114, 38 L. ed. 1031), it was held: ' A tax law which grants to the taxpayer a right to be heard on the assessment of his property before final judgment provides a due process of law for determining the valuation, although it makes no provision for a rehearing.' In McGehee on Due Process of Law, 239, it is said: ' Since proceedings for the assessment and collection of taxes were in constant use long before the adoption of the constitution, and have been necessarily employed by the Federal government and the various States ever since their formation, the rule that whatever proceedings are in accord with settled usage in England and in this country constitute due process is peculiarly applicable to test the sufficiency of notice and hearing required in such cases.' In conformity with this principle, it has been held that the process of taxation ' involves no violation of due process of law when it is executed according to customary forms and established usages, or in subordination to the principles which underlie them.' In Gray on Limitations on the Taxing Power, 577, § 1161, it is said: ' Where, before the assessment becomes final, opportunity is given to appear and make proofs before a board of commissioners, or a board of equalization, having authority to hear complaints and proofs and make correction of the assessment, the opportunity is sufficient.' From these authorities, we think it can not be said that the 6th section of the act in question deprives the plaintiff of due process of law, required by the State and

Federal constitutions; nor do they deprive any taxpayer of the equal protection of the laws. Moreover, the 6th section of the act of 1913 provides that arbitration shall be had 'in the same manner as is now provided for the arbitration of individual tax returns, except in so far as the existing law may be modified by the provisions of this section.' The existing law on this question is contained in the Civil Code, § 1097 et seq., and in the Acts of 1910, p. 24. The code sections cited do not provide for the selection of a third assessor, or umpire, except as he may be selected by the two assessors appointed by the tax-receiver and the taxpayer. But the act of 1910 (Acts 1910, p. 24) provides that the tax-receiver may make the assessment if the return of the taxpayer is not satisfactory to him, and the taxpayer, on notice to him within twenty days after receiving such notice, may refer the question of true value to arbitrators, ' one to be chosen by himself and one to be chosen by the tax-receiver, with power to choose an umpire in case of disagreement, and their award shall be final. . . Should the two arbitrators provided for in this section fail to agree upon the value of the property, and fail to name an umpire within twenty days after their appointment, the umpire shall be named by the ordinary or county board of commissioners, as the case may be.' Construing this act in conjunction with the code section cited above, it can not be held that the law does not provide for a case where the arbitrators fail to agree, and one or both arbitrarily or capriciously refuse to agree on an umpire. The act of 1910 as 'modified by the provisions of' the act of 1913 (Acts 1913, p. 128) provides that in case of disagreement of the arbitrators the ordinary shall appoint the umpire. The disagreement, if any, will at once manifest itself, when application can be made to the ordinary for the appointment of an umpire, who can immediately proceed with his duties. There need be no unnecessary delay in the appointment of an umpire, or in the arbitration proceedings. So that, if the parties avail themselves of it, there is a remedy provided by law whereby the ordinary or county commissioners, as the case may be, can appoint an umpire in case of disagreement of the assessors, and the hearing can proceed without delay." And see, to the same effect, *Wade* v. *Turner,* 146 *Ga.* 600 (91 S. E. 690); *Turner* v. *Wade,* 147 *Ga.* 666 (95 S. E. 220); *Barnes* v. *Watson,* 148 *Ga.* 822 (98 S. E. 500).

The plaintiff cites the case of Turner *v.* Wade, 254 U. S. 64 (41 Sup. Ct. 27, 65 L. ed. 134), as authority for holding that section 6 of the Georgia tax-equalization act of 1913 (Acts 1913, p. 123) is unconstitutional because it denies the complaining tax-payer due process of law; and because, as argued, the tax assessors were not required to give any notice to the taxpayer of an opportunity to be heard, as a matter of right, before the assessment was made against him. We do not understand that the decision of the United States Supreme Court goes to the extent insisted upon by the plaintiff in error. See, in this connection, *Ogletree* v. *Woodward,* 150 *Ga.* 691, 697 (105 S. E. 243). The headnote in the Turner case, supra, is as follows: "The Georgia tax-equalization act (Laws 1913, p. 123, §§ 6-7), empowers the board of county tax-assessors to assess property for taxation, and requires it to notify the taxpayer of changes made in his returns; it gives him, if dissatisfied, the right to demand an arbitration, and provides that a majority of three arbitrators, one appointed by him, one by the board, and the third by the two so selected, shall fix the assessment; but the arbitrators must render their decision within ten days from the naming of the arbitrator by the board, otherwise the board's decision — i. e., its assessment — stands affirmed; and no notice is afforded the taxpayer before the making of the board's assessment, nor any opportunity to be heard concerning it save that before the arbitrators. *Held,* that an assessment so made by the board of county tax-assessors, increasing the valuation returned by a property owner, without notice or hearing, was without due process of law, where his remedy by arbitration proved abortive because the arbitrators, though agreeing that the assessment was excessive, could no two of them unite on a new assessment before the ten-day limitation expired." In delivering the opinion of the court in that case Mr. Justice Day, among other things, said: "In considering certain sections of the Georgia tax laws this court held in Central of Georgia Ry. Co. *v.* Wright, 207 U. S. 127, that due process of law requires that after such notice as may be appropriate the taxpayer have opportunity to be heard as to the validity of a tax and the amount thereof, by giving him the right to appear for that purpose at some stage of the proceedings." We do not understand that the decision of the Supreme Court of the United States goes further than to hold that where

the taxpayer's remedy by arbitration proved abortive because the arbitrators, though agreeing that the assessment was excessive, and where no two of them united on a new assessment before the ten-day limitation fixed by the statute expired, under such circumstances the taxpayer was denied due process of law. But such is not this case. Section 6 of the act of 1913 does provide for hearing and an arbitration " before the tax becomes irrevocably fixed." It is true it is after the tax-assessors have raised the amount of the return made by the taxpayer. But before that amount is irrevocably fixed as the true value of his property, he is given an opportunity to appoint an arbitrator and have the tax-assessors to appoint another, and those two can appoint a third; and a majority of the assessors can, after hearing evidence, fix the true value of the property to be assessed. How this deprives a taxpayer of due process of law we are unable to see. It may be that in a case like the Turner case (254 U. S., supra), where the arbitrators failed or refused to agree, and no provision is made for another hearing, in such circumstances it could be held that there was a failure of due process. But before the taxpayer can be heard to complain, he must avail himself of the remedy which is provided by the statute. In the present case the plaintiff has not even attempted to avail himself of the remedy provided in section 6 of the act of 1913, and has not asked for an arbitration on the question as to whether the assessment of his land for taxation was too high. There was no attempt to arbitrate on his part, and no failure of the arbitrators to agree, as in the Turner case.

Suppose the plaintiff had asked for an arbitration, and the hearing was had in accordance with his request; that evidence was heard pro and con, and the arbitrators had rendered a judgment fixing the true value of the land of plaintiff in error at the figure at which he gave it in for taxation, or at some other figure; can it be said, in view of the authorities cited in the case of *Vestel* v. *Edwards,* and others to the same effect, that the plaintiff has been denied due process of law? We do not think so. We are of the opinion that he is provided a remedy of which he can avail himself as a matter of right, and that he can be heard before a competent tribunal and have settled and determined the question as to the true value of the land in controversy. And if he fails to take advantage of the remedy provided him, he can not complain of a

want of due process of law. We are of the opinion that section 6, supra, is not obnoxious either to the Federal or the State constitution, as against the objections urged. An act may be constitutional, but if in the administration of the act those who administer it fail or refuse to perform a duty imposed upon them, it can not be said that the act itself is unconstitutional for that reason alone. It was the duty of the plaintiff to have tried out the remedy provided by section 6 of the act of 1913; and if he had tried it out and the arbitrators had failed or refused, or for honest difference of opinion had failed to agree on the matter of the true valuation of the land, *and the assessment of the board of tax-assessors was thus allowed to stand,* it might then be said, as it was said in the Turner case, that there was a denial of due process of law; and we do not understand that that decision goes further than that. In the Turner case it was said that " The assessment of the board of assessors ought to have been enjoined, because section 6 of the act *as construed and applied in this* case [italics ours] denies to a complaining taxpayer due process of law." No decision is broader than the facts upon which it is based, and the facts of the Turner case and those in the instant one are not alike. In the Turner case there was an appeal to arbitrators, and the arbitration failed. Here there was no effort on the part of plaintiff to avail himself of the right of a hearing before a board of arbitration; and therefore, where the right of arbitration, which includes a hearing, etc., has been conferred, and the taxpayer merely fails to avail himself of it, he can not be heard to say that he is denied due process of law.

2. The proper county authorities of Warren County made the following tax levy for the year 1920: " Sixteen dollars per thousand on $3,476,074, which will net $55,616," under which a tax fi. fa. was issued against the plaintiff, who filed a petition in equity against the sole county commissioner of Warren County under the act of 1919 (Acts 1919, p. 773), the sheriff of the county, and the county tax-assessors, to enjoin the levy of the fi. fa., upon the ground that the tax levy was void because it failed to comply with §§ 513 and 514 of the Civil Code of 1910, as set out in the foregoing statement of facts. After the filing of the petition for injunction the court made an order allowing the amendment to the tax levy, which amendment, so far as material, was as follows:

"The following assessments upon the State tax for the year 1920 are levied against all taxable property in Warren County, Georgia, subject to taxation within said county for the year 1920, the same, except the tax for road purposes, support of chain-gang, building and repairing jail and court-house, and support of paupers, being less than 50% of the State's tax for said county, to wit: To pay legal indebtedness of the county due or to become due during the year, or past due, 9/200%. To build or repair court-houses or jails, bridges, or ferries, or other public improvements, according to contract, 11.565%. To pay sheriffs', jailors', or other officers' fees that they may be legally entitled to out of the county, 11.50%. To pay expenses of the county for bailiffs at court, non-resident witnesses in criminal cases, fuel, servant hire, stationery, and the like, 17.95%. To pay jurors a per diem compensation, 11.304%. To pay expenses incurred in supporting the poor of the county and as otherwise prescribed by this court, 12.50%."

The amendment to the tax levy also included the following: "Whereas no debt was created, the following tax is levied upon the taxable property of Warren County, Georgia, for the year 1920, for the support of the chain-gang, for machinery for road building, and for purchasing rights of way in co-operation with the State Highway Department, to wit: 245.915%, to net $42,753.32." To this judgment of the court the plaintiff excepted upon the following grounds: "(b) Because the original statement which it was contended was a legal tax levy and subject to the proposed amendment was absolutely null and void, and could not be amended. (c) Because the proposed amendment to the tax levy, as allowed by the judge, was illegal in that the commissioner of roads and revenues of Warren County could not legally levy more than 100 per cent. of the State's tax to pay the accumulated debts and current expenses and four tenths (4/10) of one per cent. to build and repair the public roads of said county; whereas the proposed amended tax levy, and which was allowed by the court, did levy a tax of sixteen (16) mills in addition to the State's tax of five (5) mills, which levy was excessive and therefore illegal." Under the principle ruled in the following cases, the exception to the judge's order allowing the amendment is without merit. *Yow* v. *Sullivan,* 129 *Ga.* 187 (58 S. E. 662); *Garrison* v. *Perkins,* 137 *Ga.* 744 (74 S. E. 541).

The other exceptions to the order are likewise without merit. Under the decision in the case of *Sullivan* v. *Yow*, 125 *Ga.* 326 (54 S. E. 173.), the following items of the tax levy are not included in the provision of the code which requires that the grand jury shall recommend a fifty per cent. additional tax (Civil Code of 1910, § 508), viz.: "To build or repair court-houses or jails, bridges, or ferries, or other public improvements, according to contract: 11.565%. To pay expenses incurred in supporting the poor of the county, and as otherwise prescribed by this code: 12.50%." Excluding these items from the amended tax levy in the instant case, the remaining items amount to only fifty per cent. of the State tax, exclusive of the tax of 245.915% levied for the "support of the chain-gang, for machinery for road building, and for purchasing rights of way in co-operation with the State Highway Department." Exception is taken to the allowance of the amendment to the tax levy, on the ground that the commissioner of roads and revenues of Warren County could not legally levy more than one hundred per cent. of the State's tax to pay the "accumulated debts" and current expenses and four tenths of one per cent., to build and repair the public roads of the County of Warren; whereas the proposed amended tax levy did levy a tax of 16 mills in addition to the State's tax of 5 mills, which levy was excessive and therefore illegal. The reply to this contention is that the amendment to the tax levy expressly states that there are "no accumulated debts," and that "no debt was created." In addition to the above, the four tenths of one per cent., to which exception is also taken, was not included in the amended levy. The defendants insists that the County of Warren is not working the roads of that county under the alternative road law, and therefore that the four tenths of one per cent. authorized by that law to be levied is not applicable. Civil Code (1910), § 696. The plaintiff in the above exception evidently relies upon § 507 of the Civil Code of 1910, which provides: "When debts have accumulated against the county, so that one hundred per cent. on the State tax, or the amount specially allowed by local law, cannot pay the current expenses of the county and the debt in one year, they shall be paid off as rapidly as possible, at least twenty-five per cent. every year." But from what has been said above it is manifest that that section does not apply to the facts of the

present case. That being so, it would seem that where any county in this State is not working its convicts under the alternative road law, but has made requisition upon the proper State authorities for its pro rata share of the convicts to be used in working the public roads of the county, and is so using them, the proper county authorities having charge of the roads and revenues of the county may levy a tax sufficient to defray the expense incurred in maintaining, keeping, and equipping such convicts so obtained from the State, in addition to other tax levies which the counties are authorized to levy, and which are set out in another part of this opinion. See *Garrison* v. *Perkins,* supra; Acts 1908, p. 1119; *Commissioners of Habersham Co.* v. *Porter Mfg. Co.,* 103 *Ga.* 613, 616 (30 S. E. 547).

3. Error is assigned because the original tax levy was neither published in any public gazette nor published at the court-house door, nor entered upon the minutes of the commissioner of roads and revenues of the County of Warren. We are of the opinion that this assignment of error is without merit. While the provisions of §§ 514, 515 of the Civil Code of 1910, with reference to advertising a copy of the order assessing taxes, etc., should be complied with, such provision is directory and not mandatory. *Dunn* v. *Harris,* 144 *Ga.* 164, 385, 389 (86 S. E. 556, 87 S. E. 299) ; and see *Garrison* v. *Perkins,* supra. Besides, the court ordered, under the amendment to the tax levy, that it should be published and entered on the minutes as provided by §§ 514, 515 of the Civil Code, and this order is not specifically excepted to.

*Judgment affirmed. All the Justices concur.*