# CASES

DECIDED IN THE

# SUPREME COURT OF GEORGIA

AT THE

## MARCH TERM, 1914

---

### FORDHAM *et al. v.* SIKES *et al.,* commissioners.

Where, in accordance with the provision of the constitution (art. 8, sec. 4, par. 1), an election had been held in a county to determine the question of levying a tax for school purposes, which resulted in favor of such tax, and it had been levied accordingly for several years, and where, by constitutional amendment, a new county was created from a part of the territory of the old one, this did not authorize the authorities in the new county to levy a tax for school purposes without a submission of the question to the voters thereof.

(*a*) If a statute is equally susceptible of two constructions, one of which will harmonize it with the constitution and the other of which will render it unconstitutional, the former construction is generally to be preferred.

(*b*) Where a constitutional amendment creating a new county declared that certain general statutory provisions should apply to it, and that it should become "a statutory county, and shall be at all times subject to all laws applicable to all other counties in this State," this did not adopt the statutory law to which reference was made as constitutional law, or cause the new county to occupy a different position from other counties relatively to such statutes.

MARCH 10, 1914.

Petition for mandamus. Before Judge Graham. Wheeler superior court. November 29, 1913.

J. B. Fordham and others, as constituting the board of education of Wheeler County, filed their petition for a writ of mandamus against J. F. Sikes and others, as commissioners of roads and revenues of that county. The petition alleged, in substance, as fol-

lows: The County of Wheeler was created by an act of the General Assembly approved August 14, 1912, and was organized by the election of county officers on the first Tuesday in January, 1913. The territory embraced in the new county was taken entirely from the territory of Montgomery County. (The act of 1912 proposed a constitutional amendment creating the new County of Wheeler, and was ratified by the voters of the State.) At the first term of the superior court of Wheeler County, held in March, 1913, the grand jury elected a board of education for that county, and the petitioners have since been performing the duties devolving upon such board. By an act approved August 19, 1913 (Acts 1913, p. 459), the board of commissioners of roads and revenues of that county was created, one of the duties devolving upon them being the levying of county taxes. The defendants constituted that board. On September 27, 1906, the County of Montgomery, from which the territory embraced in the County of Wheeler was taken, held an election to determine whether or not the people of the former county wished to have a local tax levied for the purpose of supplementing the public-school fund received from the State. The election resulted in favor of the local tax, and it has since been levied each succeeding year. Civil Code (1910) § 1534, under which the election was held, was in force in the territory embraced in Wheeler County (being previously a part of Montgomery County) at the date of the creation and organization of the new county. By virtue of this law petitioners, at their regular meeting on May 7, 1913, recommended that a local school tax for Wheeler County, of three mills, be levied and collected during that year, for the purpose of supplementing the school fund received from the State for the support of the common schools of the county; and the recommendation was spread upon the minutes. After the board of commissioners of roads and revenues entered upon the discharge of their duties, petitioners gave notice to the chairman of that board of the recommendation above mentioned. This notice was given on August 30, and again on November 7, 1913. Notwithstanding this, the board of commissioners of roads and revenues failed and refused to levy the tax so recommended, although they have levied taxes for other purposes, and the tax-collector is proceeding to collect such other taxes. Petitioners and the people of Wheeler County will not have the money to which they are

entitled under the law, to aid them in operating the public schools of the county during the year 1913, unless the court will require the board of commissioners of roads and revenues to levy the tax for school purposes.

The defendants demurred on the following among other grounds: (1) The petition set out no cause which would entitle the plaintiffs to the relief sought. (2) It appears from the petition that there has never been an election to determine the question of local taxation for school purposes in Wheeler County, and there can be no tax levied for that purpose without such an election, under the constitution of the State. (3) It appears from the petition that the plaintiffs are relying on an election held in Montgomery County in the year 1906, and on Civil Code (1910) § 844, to put the local school-tax law into effect in Wheeler County; that the provision of section 844, to the effect that "All local laws and general laws having local application, in force within territory included within the limits of a new county, are to be in full force and effect within such territory," is in conflict with article 8, section 4, paragraph 1, of the constitution, which provides that authority may be granted to counties to establish and maintain public schools in their respective limits by local taxation, but no such laws shall take effect until the same shall be submitted to a vote of the qualified voters in each county and approved by a two-thirds majority of persons voting at such election, and the General Assembly may prescribe who shall vote on such questions. On the hearing the presiding judge refused the writ of mandamus, sustained the demurrer, and dismissed the case. The plaintiffs excepted.

*J. B. Geiger,* for plaintiffs.   *W. S. Mann,* for defendants.

LUMPKIN, J. (After stating the foregoing facts.) By the Civil Code (1910), § 6579 (constitution, article 8, section 4, paragraph 1), it is provided that authority may be granted to counties, militia districts, school districts, and municipal corporations, upon recommendation of the corporate authorities, to establish and maintain public schools in their respective limits by local taxation; "but no such laws shall take effect until the same shall have been submitted to a vote of the qualified voters in each county, militia district, school district, or municipal corporation, and approved by a two-thirds majority of persons voting at such election, and the General Assembly may prescribe who shall vote on such questions."

By section 6594 (constitution, art. 11, sec. 1, par. 1) it is declared that "Each county shall be a body corporate, with such powers and limitations as may be prescribed by law." When "each county" is mentioned in the constitutional provision first above cited, it means a county recognized and declared in the other provision of the constitution to be a body corporate. In other words, the constitution contemplated that each county, constituting a body corporate for local governmental purposes, should determine for itself by election whether local taxation for public schools should be enforced within its limits. It did not refer to a mere tract of land, but to a constitutional county. There was no Wheeler County until the constitutional amendment of 1912 created it. Therefore, prior to that time, there could be no election in Wheeler County. The election held in 1906 was held in Montgomery County, not in Wheeler. The mere fact that the latter county, when created, included only territory which had formerly been a part of Montgomery County makes no difference. The voters of Wheeler County were entitled to pass upon the question for that county separately, and not merely to vote as a part of the electorate of another county. The inhabitants in the territory which subsequently was incorporated in the new county may have been very much opposed to a local school tax in the original county, and have been outvoted by the other citizens of such county. Or they may have thought it advisable, under the conditions existing within the territory of the entire original county, to have local taxation for public schools; and yet they may entertain an entirely different opinion as to the advisability of such taxation as applied to a new and smaller county, with different conditions. If it be urged that, because an election for local taxation for school purposes was carried in one county, it would operate as authority to tax in a new county created from a portion of the territory of the old one, why may it not also be contended that an election for the purpose of authorizing the issuing of bonds, or the creation of a debt in the original county, would confer authority on the officials of the new county to issue bonds or to create a new indebtedness in that county? In this case the new county was created entirely from new territory taken from one older county, but it might have been made from territory taken from several existing counties, with different conditions as to a county tax for school purposes. The confusion

which would result from an effort to apply the rule contended for will readily appear.

. Reliance is placed on the first part of Civil Code (1910) § 844, which reads as follows: "All local laws and general laws having local application, in force within territory included within the limits of a new county, are to be in full force and effect within such territory," etc. If the section stopped at this point, and were construed as providing that the officers of a new county might levy and collect a local school tax therein without an election, because its territory had been taken from another county in which an election had been held for the purpose of authorizing a tax, it would clearly violate the constitutional requirements above mentioned, and, as applied to such taxation, would be void. The section mentioned does not, however, end with the quotation above made, but contains also these words: "provided, that where by the general laws provision is made for any of said laws going into effect in any county by an election to be held, that an election may be held in the new county at any time after its creation, for the purpose of putting the local laws into effect, notwithstanding the provision of any general law requiring the lapse of any specified time after the last election on the subject." Here provision is made in regard to an election to be held in the new county after its creation, for the purpose of putting the law into effect. The closing words of the section, beginning with "notwithstanding," have reference to the fact that, after an election has been had on certain subjects, another election is not permitted until a specified time has elapsed. Any such provision was not to affect the right to hold an election in a new county at any time after its creation, in order to put into effect the local law or general law with a local application. The general rule is, that if a statute is equally susceptible of two constructions, one of which will make it valid, and the other of which will make it unconstitutional, the former is to be preferred. While the language of the section quoted is not entirely clear, it should be harmonized with the fundamental law, rather than be construed to be in antagonism therewith. It is as capable of the former construction as of the latter; and the former will be adopted.

The constitutional amendment by which Wheeler County was created (Acts 1912, p. 41) contained the following: "Provided, that the laws applicable to the organization of new counties, as

found in sections 829 to 848, inclusive, of the Code of 1911 [1910], are hereby made applicable to said County of Wheeler whenever the same may be created by the proposed amendment to the constitution, and that said county, when created, shall become a statutory county and shall be at all times subject to all laws applicable to all other counties in this State." From this it was argued that Civil Code (1910) § 844 became a part of the constitution so far as it applied to Wheeler County, and was valid as to that county, though it might be invalid as to every other county in the State. Under the construction of the section cited which has been given above, there is no antagonism between the law in Wheeler County and that in other counties, even if the contention were sound that the reference to certain sections of the code in the amendment creating Wheeler County made them constitutional law, instead of statutory law, as to it. But such a construction would be strained and artificial. There is nothing to indicate the intention of the legislature in proposing the constitutional amendment creating Wheeler County, or of the people in ratifying it, to place that county on a different basis from all other counties in the State, to make an unconstitutional provision of a statute constitutional as to it, and to vest it with the power to be a law unto itself. The statement that the county here created "shall become a statutory county and shall be at all times subject to all laws applicable to all other counties in this State" shows that the purpose of the proposed amendment to the constitution creating the new county was merely to make the statutory laws of force as to other counties equally applicable to it, and not to raise them to the dignity of constitutional laws, or to destroy the uniformity of the laws of the State in regard to local taxation in a county for school purposes.

The officials of Wheeler County had no authority to levy and collect a local county tax for school purposes, without a submission of the question to the voters of that county. It was accordingly not error to refuse the mandamus prayed, and to dismiss the petition on demurrer.          *Judgment affirmed. All the Justices concur.*