### OGLETREE *et al. v.* WOODWARD, chairman, *et al.*

The thirteenth section of the act of August 14, 1913 (Acts 1913, pp. 123, 130), relating to the duties and defining the powers of the State tax-commissioner created by that act, and providing for notice to the chairman of the county board of tax-assessors of any county whose valuations upon the various classes of property in the county have been increased, and for arbitration in case of dissatisfaction of the county board of tax-assessors with the action of the State tax-commissioner, and for a decision by a majority of the arbitrators fixing the final assessment of the various classes of property in the county affected by the order of the State tax-commissioner, is not unconstitutional on the ground that it is in conflict with article 7, section 2, paragraph 1, of the constitution of Georgia (Civil Code, § 6553), which declares that all taxation shall be uniform upon the same class of subjects and ad valorem upon all property subject to be taxed within the territorial limits of the authority levying the tax; nor is it repugnant to the due-process clause of the constitution of the United States, as contained in the fourteenth amendment, nor does it deprive the individual taxpayer of a county of the equal protection of the laws and of due process as guaranteed by the constitution of the State of Georgia.

No. 2256.   DECEMBER 9, 1920.

Petition for injunction.   Before Judge Searcy.   Butts superior court.   September 25, 1920.

*W. E. Watkins,* for plaintiffs.

*R. A. Denny, attorney-general, H. M. Fletcher, solicitor-general,* and *Graham Wright,* contra.

GEORGE, J.   The thirteenth section of the act of the General Assembly, approved August 14, 1913 (Acts 1913, pp. 123, 130), generally referred to as the tax-equalization law, provides: "It shall be the duty of the State tax-commissioner to carefully examine the tax digests of the several counties of this State, filed in the office of the comptroller-general, and to compare said digests for the purpose of ascertaining whether the tax valuation of the various classes of property, as made in the respective counties of the State, is reasonably uniform as between the respective counties.   It is the purpose and intent of this act to bring about, as far as practicable, an equalization throughout the State of the values of the various classes of property subject to be taxed, so that the values fixed in one county shall not be out of due proportion to the values fixed in other counties on the same classes of property.   If it shall appear to said commissioner that in any one or more of the counties of this State the taxable

values fixed upon any one or more classes of property are not reasonably uniform with the values fixed upon the same classes of property in other counties, the said commissioner shall investigate and inquire as to the reason therefor, and, after making such investigation and comparison, shall have authority to adjust and equalize the same, either by adding a fixed per centum to the county valuation of any class of property in any county, if he finds the county valuation was too low, or by deducting a fixed per centum from the county valuation if he finds the county valuation was too high, as may appear to be just and right between the counties; and the said State tax-commissioner shall thereupon notify by United States mail the chairman of the county board of tax-assessors of the county affected that the county valuations upon the classes of property specified in said notice shall be raised or lowered by the per centum fixed by said State tax-commissioner, and the comptroller-general thereupon return to said county its tax digest for correction accordingly." Under the provisions of the section of the act quoted above, the State tax-commissioner ordered the board of county tax assessors for Butts County to add a fixed per centum to the county valuation of all classes of property in that county. Certain citizens and taxpayers of Butts County filed an equitable petition against the board of county tax-assessors, seeking to enjoin the board from carrying out the order of the State tax-commissioner. The State of Georgia (the Governor) and the State tax-commissioner intervened in the cause. Certain allegations of fact are made, in the petition; but in so far as these allegations are supported by any evidence in the record, the facts were adjudicated by the lower court in his order denying an interlocutory injunction. As the case stands, it appears that the board of county tax-assessors was content to correct the county valuation upon all classes of property in the county, as ordered by the State tax-commissioner. The validity of the order depends upon the validity of the tax-equalization law of 1913. The petitioners insist that the act of 1913, especially the thirteenth section thereof, is violative of the following provisions of the constitution of Georgia: (1) Article 7, section 2, paragraph 1 (Civil Code, § 6553)., which provides: "All taxation shall be uniform upon the same class of subjects, and ad valorem

on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." (2) Article 1, section 1, paragraph 2 (Civil Code, § 6358), which declares: "Protection to person and property is the paramount duty of government, and shall be impartial and complete." (3) Article 1, section 1, paragraph 3 (Civil Code, § 6359), which declares: "No person shall be deprived of life, liberty, or property, except by due process of law." Petitioners also insist that the act is violative of that portion of the fourteenth amendment to the constitution of the United States which declares: "nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

With reference to the suggestion that the act in question violates the provision of the constitution of this State which provides that all taxation shall be uniform upon the same class of subjects and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, it is contended that the comptroller-general is charged with the assessment of the valuation for taxation of the property of railroad, telegraph, and other public-utility companies or corporations, while the act in question provides for the assessment of all other property through the tax-receiver of the county, the board of county tax-assessors, and the State tax-commissioner, and that no provision is made in the law of this State for the equalization of the valuation of the property of railroad, telegraph, and public-utility companies or corporations with the valuation of other property by the county board of assessors and and the State tax commissioner. The question is in principle settled adversely to the plaintiffs in error by the decision in *Columbus Southern Railway Co.* v. *Wright*, 89 *Ga.* 574 (15 S. E. 293). The question, in part, is in terms settled adversely to the plaintiffs in error in *Barnes* v. *Watson*, 148 *Ga.* 822 (3), 825 (98 S. E. 500), where it was ruled that "the tax-equalization law is not unconstitutional on the ground that it is in conflict with art. 7, sec. 2, par. 1, of the constitution of Georgia (Civil Code, § 6553), which declares that all taxation shall be uniform upon the same class of subjects, etc." Treating the ques-

tion as an open one, the law involved is not, for the reason suggested, violative of the provision of the State constitution which declares that all taxation shall be uniform upon the same class of subjects and ad valorem upon all property subject to be taxed, or of the provision of the State constitution which declares that protection to person and property shall be impartial and complete. Under the law of this State all property must be returned "at its fair market value." Civil Code (1910), § 1010. No distinction, it will be observed, is made between the property owned by public-utility corporations and individuals. Civil Code (1910), § 1004. By section 1043 of the same code, the returns of all railroad, insurance and express companies, and agents of foreign companies authorized to do business in this State are required to be made to the comptroller-general. By section 1075, the returns of all other companies and persons subject to taxation are required to be made to the tax-receivers of the several counties of the State. Sections 1045 and 1055 et seq. clothe the comptroller-general with ample power to see that all property required to be returned to him is returned at its fair market value. By the act in question the board of county tax-assessors is given the power to see that all property required to be returned to the tax-receiver of the county is returned at its fair market value, and as between the individuals of the several counties of the State such returns shall be equalized. By the act of 1913 the State tax-commissioner is given the authority to equalize the valuation upon all classes of property required to be returned to the tax-receivers of the several counties between the several counties of the State. The basic requirement in each instance, whether the property is returnable to the comptroller-general or to the tax-receivers of the several counties, is that all property shall be returned and assessed at its fair market value; and though public-utility corporations are required to make returns to the comptroller-general, no arbitrary classification is apparent or manifest. Railroad, telegraph, and telephone lines operate throughout the State. Public-utility corporations frequently operate throughout several counties. It is obvious that these public-utility corporations can not conveniently and satisfactorily deal with the several boards of county tax-assessors. It is likewise obvious that boards of county tax-assessors are but inadequately equipped and

prepared to require of a railroad company, with its line extending throughout the entire State, a return of its property at its fair market value. That the taxing authorities may, in any instance, fail to comply with the law and to require property to be returned at its fair market value is no reason for holding the law unconstitutional, where, as in this State, the statute authorizes no such discrimination. *Georgia Midland &c. R. Co.* v. *State,* 89 *Ga.* 598 (15 S. E. 301) ; Cummings v. Merchants National Bank, 101 U. S. 153 (25 L. ed. 903). See also Cleveland &c. R. Co. *v.* Backus, 133 Ind. 513 (33 N. E. 421, 18 L. R. A. 729) ; State *v.* City of Baltimore, 105 Md. 1 (65 Atl. 369) ; Atlantic &c. R. Co. *v.* City of Newbern, 147 N. C. 165 (60 S. E. 925) ; Missouri &c. R. Co. *v.* Shannon, 100 Tex. 379 (100 S. W. 138, 10 L. R. A. (N. S.) 681).

It is insisted that the act in question is violative of the due-process clauses of the State and Federal constitutions, because the act does not provide for notice to the individual taxpayer and an opportunity to be heard, either before or after the State tax-commissioner orders a general increase in the valuation of the various classes of property in the county, or before such order is complied with by the board of county tax-assessors. Section 14 of the act provides that notice of an increase of assessment by the State tax-commissioner shall be given to the board of county tax-assessors, and the board may, as of right, demand an arbitration in behalf of the county, in the event the board desires it. This is due process of law, so far as guaranteed by the fourteenth amendment to the constitution of the United States. In Bi-Metallic Investment Co. *v.* State Board, 239 U. S. 441, 444 (36 Sup. Ct. 141, 60 L. ed. 372), Mr. Justice Holmes, speaking for the court, said : "For the purposes of decision we assume that the constitutional question is presented in the baldest way — that neither the plaintiff nor the assessor of Denver, who presents a brief on the plaintiff's side, nor any representative of the city and county, was given an opportunity to be heard, other than such as they may have had by reason of the fact that the time of meeting of the boards is fixed by law. On this assumption it is obvious that injustice may be suffered if some property in the county already has been valued at its full worth. But if certain property has been valued at a rate different from that generally

prevailing in the county, the owner has had his opportunity to protest and appeal as usual in our system of taxation (Hagar *v.* Reclamation District, 111 U. S. 701, 709, 710, 4 Sup. Ct. 663, 28 L. ed. 569); so that it must be assumed that the property owners in the county all stand alike. The question then is whether all individuals have a constitutional right to be heard before a matter can be decided in which all are equally concerned — here, for instance, before a superior board decides that the local taxing officers have adopted a system of undervaluation throughout a county, as notoriously often has been the case. The answer of this court in the State Railroad Tax Cases, 92 U. S. 575 (23 L. ed. 663), at least as to any further notice, was that it was hard to believe that the proposition was seriously made. Where a rule of conduct applies to more than a few people, it is impracticable that every one should have a direct voice in its adoption. The constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the State power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule. If the result in this case had been reached, as it might have been, by the State's doubling the rate of taxation, no one would suggest that the fourteenth amendment was violated unless every person affected had been allowed an opportunity to raise his voice against it before the body entrusted by the State constitution with the power. In considering this case in this court we must assume that the proper State machinery has been used; and the question is whether, if the State constitution had declared that Denver had been undervalued as compared with the rest of the State and had decreed that for the current year the valuation should be forty per cent. higher, the objection now urged could prevail. It appears to us that to put the question is to answer it. There must be a limit to individual argument in such matters, if government is to go on."

Is the act violative of the due-process clause of the constitution of the State? The act guarantees to every individual taxpayer in the county notice and an opportunity to be heard be-

fore the assessment made by the board of county tax-assessors shall become final. Before an increase in the valuation of the various classes of property in the county, by order of the State tax-commissioner, becomes final, the board of county tax-assessors is, of right, given notice and an opportunity to be heard. This provision of the act manifestly deals with the county as a unit; and while the decision of the Supreme Court of the United States is not controlling, the line of reasoning adopted by that court upon the question here involved is applicable. We accordingly follow it, and hold that the act in question is not violative of the due-process clause of the constitution of this State.

In the case of Turner v. Wade, 254 U. S. (41 Sup. Ct. 27), the Supreme Court of the United States held that section 6 of the act in question, as construed and applied in the case under consideration, denied to the complaining taxpayer due process of law. The particular provision of the act affected by the decision of the Supreme Court of the United States is as follows: " . . else the decision of said board shall stand affirmed and shall be binding in the premises." In that case the taxpayer demanded an arbitration. Arbitrators were selected as provided in the act. The arbitrators could not agree, though all the arbitrators believed the assessment, as made by the board of county tax assessors, too high. The trial court and this court (Wade v. Turner, 146 Ga. 600, 91 S. E. 690; Turner v. Wade, 147 Ga. 666, 95 S. E. 220) followed the statutory requirement in such circumstances, and held the valuation of the board of county tax assessors to be "binding in the premises." The decision of the Supreme Court of the United States, as we construe it, merely holds that the statutory requirement, quoted above, is unconstitutional. The main purpose of the statute not being affected by the unconstitutionality of the particular provision, the whole act is not thereby defeated.

In the present case the board of county tax-assessors did not demand an arbitration, as was its right under the act. There was no attempt to arbitrate and no failure of the arbitrators to agree, as in the case of. Turner v. Wade, supra. We are not, therefore, called upon to decide whether, on failure of the arbitrators to agree, the statutory requirement that the increase as ordered by the State tax-commissioner "shall stand affirmed," is

violative of the due-process clause of either the State or the Federal constitution. If the invalidity of this provision of the act be conceded and the offending section entirely eliminated, the legislative scheme would not be impaired in any material feature.

*Judgment affirmed. All the Justices concur.*