27719. GRIGGS et al. v. GREENE et al.
27741. BLACKMON v. BRASINGTON et al.

Argued January 12, 1973 — Decided February 22, 1973 — Rehearing denied March 15, 1973.

*Charles T. Ballard,* for appellants.

*Moffett & Henderson, John Walton Henderson,* for appellees.

Case No. 27741. Injunction. Brooks Superior Court. Before Judge Calhoun.

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Richard L. Chambers, H. Perry Michael, Assistant Attorneys General, Gary B. Andrews,* for appellant.

*Alexander, Vann & Lilly, Roy M. Lilly, Thomas K. Vann, James Lovett,* for appellees.

*Sanders, Mottola, Haugen, Wood & Goodson, Charles Van S. Mottola, Heyman & Sizemore, Terry P. McKenna, William H. Major, George H. Marshall, Jr.,* amicus curiae.

HAWES, Justice. The appeal in each of these cases is from the order and judgment of the respective superior courts enjoining the defendants from putting into effect in their respective counties orders of the State Revenue Commissioner adjusting by varying percentages the valuations reported by the defendant tax commissioners and assessors on their respective digests as to certain real and personal properties referred to therein. While there are differences in the two cases, the substantial question presented by each is the same, and we have accordingly elected to dispose of them together, though they emanate from widely separated counties of the state.

The *Griggs* case was commenced when a large number of individual taxpayers, suing on behalf of themselves individually and on behalf of all others similarly situated, filed a complaint naming as defendants the tax assessors and the tax commissioner of Fayette County seeking an injunction against the defendants putting into effect the revenue commissioner's order which required that the defendants adjust the tax digest of Fayette County by raising the assessment on real property located outside

cities by 89 percent, by raising the assessment on real property located inside cities by 28 percent and by raising the assessment on personal property except bank shares and motor vehicles by 34 percent "to achieve a digest of 40 percent of fair market value as required by Georgia law." The case represented by the appeal of Blackmon was commenced when Brasington and four other individuals filed a complaint in the Superior Court of Brooks County against five named individuals as members of the Board of Tax Assessors of Brooks County, against five named individuals as members of the Board of Commissioners of Brooks County, against C. E. Dodd as Tax Commissioner of Brooks County, and against John A. Blackmon as Revenue Commissioner of the State of Georgia, seeking a declaratory judgment and injunctive relief against the defendants putting into effect an order of the revenue commissioner similar to the order involved in the *Griggs* case which required that the tax assessors adjust the tax digest of Brooks County by increasing the assessments on all individual parcels of real estate located outside cities by 37 percent, and on personal property except bank shares and motor vehicles by 13 percent "to achieve a digest of 40 percent of fair market value, as required by Georgia law."

In each of the cases, the facts, so far as relevant to the issues, are substantially the same and are not in dispute. In each case the parties plaintiff and other taxpayers timely filed tax returns declaring their tangible property, both real and personal, subject to taxation at values which the taxpayers deemed to be the fair market value of the same, and in each instance, the tax assessors, after either accepting the valuation returned by the individual taxpayer or adjusting the same and notifying the taxpayer, and after any adjustments in such valuations resulting from arbitration assessed each parcel of real property and all tangible personal property at 40 percent of the fair market value which had been so fixed by that

procedure, as required by law. Code § 92-5703, as amended by Ga. L. 1968, pp. 358, 359. Thereafter, the tax receiver of each county prepared the county tax digest and forwarded the same to the State Revenue Commissioner for approval. Upon examination of the respective digests, the State Revenue Commissioner issued the orders respecting each county digest as above referred to and the same were returned to the respective tax commissioners who thereupon, together with the tax assessors of the respective counties, applied percentage adjustments to individual valuations and assessments of the taxpayers owning property of the category covered by the commissioner's order, and without prior notice of such percentage adjustments to any individual taxpayer, mailed tax bills reflecting the increased assessments.

In the *Griggs* case, as was said by the trial court in the order appealed from, the "gist of the action insofar as constitutional grounds are concerned is the lack of due process resulting from failure to give notice. This point is sufficiently raised and the decision therein cannot be voided by passing a decision herein on any collateral matter." In neither that case nor in the *Blackmon* case did the complainants levy a direct attack on the constitutionality of the laws with which we hereinafter deal. The only relief sought in the *Griggs* case was an injunction prohibiting the defendants from arbitrarily raising assessments pursuant to the order of the revenue commissioner on the ground that the failure to afford the plaintiffs notice and an opportunity to be heard after the issuance of the revenue commissioner's order denied them the equal protection of the law and due process in violation of those constitutional guarantees. The trial court there found in accordance with that contention and merely enjoined the tax assessors from proceeding with any assessment contained in the 1972 Fayette County tax digest insofar as the same had been corrected, changed or equalized by the tax assessors pursuant to the revenue

commissioner's order. In the *Blackmon* case, the attack was on the lawfulness of the procedure followed by the revenue commissioner on the ground that the failure to afford the plaintiffs notice and an opportunity to be heard denied them equal protection of the laws and due process. In that case, however, the trial court in its interlocutory decree expressly held Ga. L. 1966, p. 45, as amended by Ga. L. 1970, p. 91, and Ga. L. 1970, p. 642, as amended by Ga. L. 1972, p. 174 to be unconstitutional in that by reason of their failure to provide for notice and an opportunity to be heard after the revenue commissioner has ordered adjustments in the tax digest pursuant thereto they deny equal protection and due process of law.

In the view which we take of these cases, it is necessary to enunciate one other constitutional principle in order that the ruling which we make may be clearly understood. We, therefore, restate the real issues involved in these cases, as follows: First, does the Constitution permit the sub-classification of tangible property for the purpose of applying different assessment rates and procedures to one or more sub-classes of tangible property, and, if so, has the legislature in enacting the provisions of Code § 92-7001 as amended by the various Acts amendatory thereof in fact created sub-classifications of tangible property; second, may the legislature consistent with constitutional due process provide for the adjustment of the tax digests of the various counties by order of the revenue commissioner which results in the adjustment of the assessments of individual taxpayers, without affording the individuals whose assessments are affected by such percentage adjustments notice and an opportunity to be heard thereon.

■ The contention is made that the plaintiffs had no standing to sue in these cases in the absence of showing that they had tendered to the tax commissioners of the

respective counties involved the taxes which they admit would be due if their contentions were sustained. Appellants rely upon the principle enunciated by this court in *Walker v. Burns,* 220 Ga. 467 (139 SE2d 389), and followed thereafter by a number of cases such as *Hobbs v. Nichols,* 223 Ga. 639 (157 SE2d 294), and as explained by this court in *Register v. Langdale,* 226 Ga. 82 (1) (172 SE2d 620). However, in neither of the cases presently before us did the plaintiffs ask that the counties be enjoined from collecting taxes from them. The relief which they sought and which the trial court granted was an injunction against the taxing authorities from proceeding under the alleged void and illegal tax digests. Any owner of property subject to taxation would have standing to seek the relief sought by the plaintiffs in these cases without tendering any taxes that he might owe. *Dobson v. Brown,* 225 Ga. 73, 76, supra. There is no merit in this contention of the appellants.

■ Article VII, Sec. I, Par. III of the Constitution of 1945 as amended in 1963 provides: "All taxes shall be levied and collected under general laws and for public purposes only. All taxation shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. Classes of subjects for taxation of property shall consist of tangible property and one or more classes of intangible personal property including money. The General Assembly shall have the power to classify property including money for taxation, and to adopt different rates and different methods for different classes of such property. Notwithstanding anything to the contrary contained in this paragraph, the General Assembly shall be authorized to enact legislation treating any and all motor vehicles, including trailers, as a separate class from other classes of tangible property for ad valorem property tax purposes, and to adopt different rates, methods or assessment dates for the taxation of such property, and to enact legislation consistent

herewith to prevent any person, firm or corporation from escaping payment of their fair share of ad valorem taxes on said motor vehicles." Code Ann. § 2-5403. It is now too well established to admit of any argument to the contrary that this constitutional provision establishes as a single *class* of property all real property and all tangible personal property (except motor vehicles including trailers which may be established by the General Assembly as a separate class from other classes of tangible property) for ad valorem property tax purposes. *Mayor &c. of Savannah v. Weed,* 84 Ga. 683 (11 SE 235, 8 LRA 270); *Hutchins v. Howard,* 211 Ga. 830 (1) (89 SE2d 183); *Colvard v. Ridley,* 218 Ga. 490 (1) (128 SE2d 732). Under the rulings made by this court in the foregoing cases, taxation of a single class of property within the taxing unit must be uniform. In this case, as in the *Hutchins* case, the territory to which the tax applies is co-extensive with the limits of the counties involved. Thus, we conclude that in Fayette County, Georgia, and in Brooks County, Georgia, and in all other counties of the state all tangible property, both real and personal, except automobiles and trailers, constitutes a single class of property for the purposes of taxation, and must be assessed and taxed alike, and that the General Assembly has no authority to establish different classes or sub-classes of tangible property other than as fixed by the constitutional provision quoted.

Do the various Acts of the legislature providing for the assessment of tangible property, and the equalization of assessments purport to create sub-classes of tangible property or to authorize the revenue commissioner, by administrative order or otherwise, to create different classes of tangible property for this purpose? "All presumptions being in favor of the constitutionality of an Act of the General Assembly, 'it cannot be lawfully set aside by the courts unless the alleged conflict with the Constitution is plain and palpable.' *Mayes v. Daniel,* 186

Ga. 345 (198 SE 535)." *Culbreth v. Southwest Ga. Housing Authority,* 199 Ga. 183, 189 (33 SE2d 684). "It is a well-settled rule that if a statute is equally susceptible of two constructions, one of which will harmonize it with the Constitution and the other of which will render it unconstitutional, the former construction is generally to be preferred. *Fordham v. Sikes,* 141 Ga. 469 (a) (89 SE 208)." *Thomas v. Bd. of Commrs. of Chattooga County,* 196 Ga. 10, 14 (25 SE2d 647). Applying these rules, while it is true that the various Acts of the legislature re-specting the assessment of property for taxation and the equalization of assessments refer to "adjustments in the valuation of any class or classes of property" and use other like expressions, we think it is plain that such references are to classes of property as established by the Constitution. We have carefully examined virtually all of the Acts of the legislature relating to this subject passed in the last few years, and especially Ga. L. 1966, p. 45; 1970, p. 91; 1970, p. 642; and, 1972, p. 174 referred to in the orders of the trial courts which are appealed from, and we find no language in any of those Acts which expressly establishes separate classes of tangible property for the purposes of taxation, and no language which can be said to reasonably authorize the con-struction that such was the legislative intent. As now extant, these Acts are codified as Code Ann. §§ 92-7001 through 92-7002.1.

It appears from the records in these cases that the revenue commissioner has adopted the practice and procedure for the purpose of reporting county digests of subdividing the single class of tangible property into a number of sub-categories or classes; for example, real estate is divided into two categories, that lying outside of cities and that lying inside of cities, and tangible personal property is divided into at least five sub-classes, to wit: merchandise, inventory, fixtures and mill supplies; mo-tor boats, airplanes and house trailers; machinery

equipment for manufacturing and mining; livestock, farm implements, tractors and fertilizers; and other personal property. That for the purposes of statistical accounting or other non-taxing ends, the revenue commissioner may sub-classify property is not questioned in these cases, and it is unnecessary for us to pass upon the legality of this practice except to observe that no sound reason appears why such sub-classification may not be made for those limited purposes. However, as we have observed above, the Constitution establishes all tangible property (except automobiles and trailers), both real and personal, as a single class for the purpose of taxation, and it commands that all property in that class must be treated uniformly. In the orders of the revenue commissioner directed to the tax receivers of the counties here involved, the sub-classifications above enumerated were utilized for purposes of making adjustments in the tax digest as to some of these sub-classes with different adjustments as to other sub-classes, and no adjustments at all as to still other sub-classes. The orders of the revenue commissioner in question, if complied with, would thus bring about a violation of the constitutional requirement of uniformity as to the class of tangible property within the taxing unit. It was, therefore, proper for the trial court in each case to enjoin the enforcement of the respective orders and to enjoin the respective tax assessors from putting such orders into effect. However, the statutes under which the revenue commissioner purported to act do not, as we have already observed, either specifically or impliedly authorize such sub-classification, and they do not, therefore, in this respect violate the Constitution.

It remains, therefore, for us to determine whether by reason of the conceded failure of the various Acts embodied in Code Ann. § 92-7001 relating to the equalization of county tax digests as between the counties and as between the various classes of property within a

county to provide for notice and an opportunity for a hearing to individual taxpayers when adjustments are made in individual assessments pursuant to orders of the revenue commissioner issued under authority thereof, said Acts are violative of the due process and equal protection provisions of the State and Federal Constitutions.

In answering this question, it would be profitable to look broadly at the scheme of property taxation and equalization as embodied in the Georgia law. "Taxation on all real and tangible personal property subject to be taxed is required to be ad valorem—that is, according to value, and the requirement in the Constitution that the rule of taxation shall be uniform, means that all kinds of property of the same class not absolutely exempt must be taxed alike, by the same standard of valuation, equally with other taxable property of the same class, and co-extensively with the territory to which it applies, meaning the territory from which the given tax, as a whole is to be drawn." *Hutchins v. Howard,* 211 Ga. 830 (2), supra; Ga. L. 1937-38, Ex. Sess., pp. 156, 158 (Code Ann. § 92-114); *Colvard v. Ridley,* 218 Ga. 490, supra. As was further said by Justice Candler speaking for this court in the *Hutchins* case, "The law requires that all real and tangible personal property be assessed at its fair market value. Code §§ 92-5701, 92-5702. It establishes a scheme of administrative machinery to bring this about. § 92-6901 et seq. . . And we might well say, as did the Supreme Court of the United States in Green v. L. & I. R. Co., 244 U. S. 499, 501 (37 SC 673, 61 LE 1280, AC 1917E 88), that 'the duty to assess at full value is not supreme but yields to the duty to avoid discrimination.' "

Two chapters of Title 92 of the 1933 Code are devoted to the equalization of assessments. Chapter 92-69 relates to the equalization of assessments within the county as between individual taxpayers. Chapter 92-70 relates to the equalization of tax digests as between the counties.

The purpose of each is to achieve as near as may be uniformity and equality of assessment as between individual taxpayers within a county and uniformity and equality as between digests of the various counties of the state. While both of these chapters as originally written have been extensively amended in recent years the overall scheme remains the same. The first step in achieving uniformity and equality as between individual taxpayers within the various counties is the requirement that each individual taxpayer return his property at its fair market value. Within each county a board of tax assessors is established to review the returns of the individual taxpayers so as to ascertain that all property not absolutely exempt is returned at its fair market value. Whenever the tax assessors in the performance of their duties ascertain that a particular taxpayer has failed to return his property at its fair market value they are required by law to adjust the return by assessing the property returned at what they determine to be its fair market value, which may be more or less than the value placed upon the property by the taxpayer. When the tax assessors make an adjustment with respect to the return of any individual taxpayer, they are required by law to give him notice thereof and to afford him an opportunity to contest their valuation. With respect to the assessments involved in these cases, the method for contesting valuations placed on property by the tax assessors was arbitration. Where the difference between the valuation of the board of tax assessors and valuation of the arbitrators exceeded the sum of $1,000, the taxpayer or the board of tax assessors could appeal the decision of the arbitrators to the superior court. Code § 92-6912, as amended by Ga. L. 1969, p. 942. *Hancock v. Bd. of Tax Assessors of Harris County*, 226 Ga. 570 (176 SE2d 102). This procedure satisfied the requirements of due process and equal protection insofar as these require notice and an opportunity to be heard. When this

procedure has been completed as to all taxpayers within a particular county desiring to avail themselves of arbitration and appeal, and when the digest has been compiled reflecting all assessed property, however assessed, a presumption of law arises that as between individual taxpayers within the county the valuation of all property for assessment purposes has been equalized and made uniform.

Thereafter, under the provisions of Code § 92-6917, the county boards of tax assessors transmit one copy of the completed tax digest to the State Revenue Commissioner for examination and approval. Under the provisions of Chapter 92-70, it is the duty of the revenue commissioner to carefully examine the digest, to compare the digests of the various counties for the purpose of ascertaining whether the valuation of the various classes of property as made in the respective counties is reasonably uniform as between the counties and as between the various classes within the county. It is clear that the duty of the revenue commissioner to examine the digest of a particular county extends no further than an examination of the digest as to particular classes of property as entities and that he is authorized to make percentage adjustments in the digests as to any particular class or classes of property with respect to the whole digest of that class and not with respect to segments of the class. Under the law, when the revenue commissioner orders percentage adjustments in the assessments as to any class or classes of property, it is his further duty to make adjustments in the millage rate of the county "so as to ensure that the adjusted county digest will produce an amount of revenue reasonably equivalent to that amount of revenue which would have been produced had no adjustments been made to the county valuations." Code Ann. § 92-7001 (c). The presumption is that adjustments thus made in the total digest do not disturb the previously established

uniformity and equality as between individual taxpayers since all who pay taxes on the class or classes of property to which the adjustments are applied remain in substantially the same relation to each other after the adjustments as they were before the adjustments were made.

The scheme of equalization which we have outlined above was substantially recognized by this court in the case of *Ogletree v. Woodward,* 150 Ga. 691 et seq. (105 SE 243) wherein the issue as to the right of individual taxpayers to notice of adjustments made pursuant to the order of the revenue commissioner (then the tax commissioner) and the right to contest such adjustments was expressly raised and decided adversely to the contentions of the taxpayers there. In disposing of that contention, this court said: "It is insisted that the Act in question is violative of the due-process clauses of the State and Federal Constitutions, because the Act does not provide for notice to the individual taxpayer and an opportunity to be heard, either before or after the State tax-commissioner orders a general increase in the valuation of the various classes of property in the county, or before such order is complied with by the board of county tax-assessors. Section 14 of the Act provides that notice of an increase of assessment by the State tax-commissioner shall be given to the board of county tax-assessors, and the board may, as of right, demand an arbitration in behalf of the county, in the event the board desires it. This is due process of law, so far as guaranteed by the Fourteenth Amendment to the Constitution of the United States. In Bi-Metallic Investment Co. v. State Board, 239 U. S. 441, 444 (36 SC 141, 60 LE 372), Mr. Justice Holmes, speaking for the court, said: 'For the purposes of decision we assume that the constitutional question is presented in the baldest way—that neither the plaintiff nor the assessor of Denver, who presents a brief on the plaintiff's side, nor any representative of the

city and county, was given an opportunity to be heard, other than such as they may have had by reason of the fact that the time of meeting of the boards is fixed by law. On this assumption it is obvious that injustice may be suffered if some property in the county already has been valued at its full worth. But if certain property has been valued at a rate different from that generally prevailing in the county, the owner has had his opportunity to protest and appeal as usual in our system of taxation (Hagar v. Reclamation District, 111 U. S. 701, 709, 710, 4 SC 663, 28 LE 569); so that it must be assumed that the property owners in the county all stand alike. The question then is whether all individuals have a constitutional right to be heard before a matter can be decided in which all are equally concerned—here, for instance, before a superior board decides that the local taxing officers have adopted a system of undervaluation throughout a county, as notoriously often has been the case. The answer of this court in the State Railroad Tax Cases, 92 U. S. 575 (23 LE 663), at least as to any further notice, was that it was hard to believe that the proposition was seriously made. Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule. If the result in this case had been reached, as it might have been, by the state's doubling the rate of taxation, no one would suggest that the Fourteenth Amendment was violated unless every person affected had been allowed an opportunity to raise his voice against it before the body entrusted by the State

Constitution with the power. In considering this case in this court we must assume that the proper state machinery has been used; and the question is whether, if the State Constitution had declared that Denver had been undervalued as compared with the rest of the state and had decreed that for the current year the valuation should be forty percent higher, the objection now urged could prevail. It appears to us that to put the question is to answer it. There must be a limit to individual argument in such matters, if government is to go on.'

"Is the act violative of the due-process clause of the Constitution of the State? The act guarantees to every individual taxpayer in the county notice and an opportunity to be heard before the assessment made by the board of county tax-assessors shall become final. Before an increase in the valuation of the various classes of property in the county, by order of the state tax-commissioner becomes final, the board of county tax-assessors is, of right, given notice and an opportunity to be heard. This provision of the act manifestly deals with the county as a unit; and while the decision of the Supreme Court of the United States is not controlling, the line of reasoning adopted by that court upon the question here involved is applicable. We accordingly follow it, and hold that the Act in question is not violative of the due-process clause of the Constitution of this State." *Ogletree v. Woodward,* 150 Ga. 691, 695, supra.

The appellees in these cases contend that the *Ogletree* case is distinguishable from this case, but they ask the court to overrule that case if we do not find in accordance with that contention. To the extent that the adjustments complained of in that case were uniform percentage adjustments as to the whole class of property to which they applied included on the digest of the county involved whereas in this case the percentage adjustments were as to only a part of the class of tangible property, that case is distinguishable. However, with respect to the ruling of

the Judge of the Superior Court of Brooks County in the *Blackmon* case declaring Ga. L. 1966, p. 45, Ga. L. 1970, p. 91, Ga. L. 1970, p. 642, and Ga. L. 1972, p. 174 to be unconstitutional as denying due process and equal protection of the laws there is no distinction between the issues in the two cases. The ruling in the *Ogletree* case is controlling as to that issue. We are convinced that that ruling is correct and that it ought not to be overruled. We, therefore, decline to overrule it but will follow it. We, therefore, hold that the Acts under which the revenue commissioner issued the orders complained of here are not unconstitutional for any reason urged. The orders complained of, however, are void and illegal because they do not follow the mandate of the Acts nor of the constitutional provisions under which they purportedly were issued and insofar as the judgments enjoined the enforcement of the orders of the revenue commissioner they are proper.

*Judgment in Case No. 27719 affirmed. Judgment in Case No. 27741 affirmed in part; reversed in part. All the Justices concur, except Gunter, J., who dissents.*

Gunter, Justice, dissenting. I am in disagreement with Division 3 of the majority opinion and that part of Division 4 of the majority opinion as follows: "The orders complained of, however, are void and illegal because they do not follow the mandate of the Acts nor the constitutional provisions under which they were purportedly issued . . ."

I think the majority opinion misses the mark entirely when it interprets the words "classes of property" as used in the equalization statute (Code Ann. § 92-7001 (c)) to mean "constitutional classes of property."

It is clear to me that these words in the equalization statute should not be so narrowly interpreted, and because they are so narrowly interpreted, I think the majority decision is based on a false premise.

The 1972 equalization statute provides that the State

Revenue Commissioner may return the digest to the local board of tax assessors to make adjustments in the valuation of any class or classes of property *in the tax digest* of any county as may be prescribed by the Commissioner to achieve the purpose and intent of the Act.

This statute does not refer to class or classes of property "as defined in the Constitution," but it refers to class or classes of property "in the tax digest."

There are many classes of property "in the tax digest," because the State Revenue Commissioner is given authority by law to prescribe the format of the tax digest used in every county. Code Ch. 92-63. And Code § 92-6305 provides: "Land and interest in land, together with the returns of personal estate and other interests the subject of taxation, shall be returned and set down in the digest in separate columns according to the classification furnished the receivers by the State Revenue Commissioner in each year, and their aggregate value extended." That statute providing for the classification of property in separate columns as directed by the State Revenue Commissioner had been with us for one hundred twenty (120) years when the General Assembly enacted the 1972 equalization statute. The 1972 statute referred to "any class or classes of property in the tax digest."

In 1972, I think the General Assembly knew that there were many classes of property contained in the tax digest of each county, far more than are contained in the constitutional definition. It is inconceivable to me that the majority can interpret the words "any class or classes of property in the tax digest" to mean "any class or classes of property as defined in the Constitution."

The majority's interpretation, to my mind, frustrates the statutory intention of allowing the State Revenue Commissioner to equalize assessments of all types of property as classified in the various columns of the tax digest within the geographical boundaries of a county

and among the one hundred fifty-nine (159) counties within the geographical boundaries of the State.

The orders of the Revenue Commissioner in these two cases were not, in my opinion, in violation of the equalization statute or the Constitution of Georgia. These orders properly sought to accomplish what the equalization statute had mandated.

I respectfully dissent.