304 Ga. 15
FINAL COPY

S18A0430. CLAYTON COUNTY BOARD OF TAX ASSESSORS v. ALDEASA ATLANTA JOINT VENTURE.

BENHAM, Justice.

This case presents the issue of whether the contract involved in this case between the City of Atlanta and a private business for the lease of retail concession space at Hartsfield-Jackson Atlanta International Airport creates a taxable interest subject to ad valorem taxation by Clayton County.  The City of Atlanta owns the Airport, which lies partially in Clayton County outside the City's boundaries.  Appellee Aldeasa Atlanta Joint Venture entered into the written agreement with the City to lease space on two different concourses at the Airport for the non-exclusive rights to operate two duty free retail stores. In stipulations of fact that were filed in the trial court in this matter, the parties referred to the agreement as the Concessions Agreement.  The Concessions Agreement became effective on November 15, 2007 and was for a term of five years.   Appellant Clayton County Board of Tax Assessors ("County") issued

real property tax assessments to Aldeasa for the 2011 and 2012 tax years on Aldeasa's purported leasehold improvements on the two parcels involved in the Concessions Agreement and also on Aldeasa's purported possessory interest in the two parcels. Aldeasa appealed the assessments and paid the tax pending the outcome of the appeal.

The matter came before the Clayton County Superior Court, where both parties filed cross-motions for summary judgment. The trial court found the Concessions Agreement created a usufruct interest in the property, and not an estate in real property; it rejected the County's assertion that it was legally authorized to impose a property tax on usufructs located at the Airport; and it also rejected the County's assertion that the Concessions Agreement created a taxable franchise. Accordingly, the trial court granted Aldeasa's motion for summary judgment and denied the motion filed by the County. The County filed this appeal, and asserts that four different taxable interests were created by the Concessions Agreement: an estate for years that may be taxed as real property pursuant to OCGA § 48-5-3; a possessory interest in the real property that may be taxed pursuant to OCGA § 6-3-21; a franchise interest that is

subject to tax under OCGA § 48-5-421; and taxable leasehold improvements.[1]
As more fully set forth below, we affirm the trial court's order.

1.  *Did the Concessions Agreement create an estate in real property or a nontaxable usufruct?*  The first issue we address is whether the Concessions Agreement created a taxable estate in real property or a nontaxable usufruct.  Generally, real property, including a leasehold and an interest in real property less than a fee interest, is subject to ad valorem taxation.  OCGA § 48-5-3.[2]  For there to be a taxable estate "there must be ownership of an interest in the property."  *Henson v. Airways Svc.*, 220 Ga. 44, 52 (136 SE2d 747) (1964).  An estate for years is an interest in real property that is generally subject to ad valorem taxation.  See OCGA § 48-5-3.  An estate for years is one which "carries with it the right to use the property in as absolute a manner as may be done with a greater estate . . . ."  OCGA § 44-6-103.  By Georgia statutory law, however, the grant by a landowner to another of the right "simply to possess and enjoy the use of such real estate either for a

---

[1] Although the notice of appeal was initially filed in the Court of Appeals, the case was transferred to this Court, which has exclusive appellate jurisdiction over constitutional matters, because the appeal of the trial court's order draws into question the constitutionality of  OCGA § 6-3-21.

[2] The City of Atlanta is not subject to taxation for the real property it owns in this case because the Airport is public property.  See OCGA § 48-5-41 (a) (1) (A) and (B) (i).

fixed time or at the will of the grantor" passes no estate; instead it creates a landlord-tenant relationship in which the tenant holds only a usufruct. OCGA § 44-7-1 (a). Because a usufruct is not considered an estate in real property under Georgia law, it is not subject to ad valorem property tax. See, e.g., *Stuttering Foundation, Inc. v. Glynn County*, 301 Ga. 492, 496 (2) (a) (i) (801 SE2d 793) (2017); *Macon-Bibb County Bd. of Tax Assessors v. Atlantic Southeast Airlines*, 262 Ga. 119 (414 SE2d 635) (1992); *Whitehead v. Kennedy*, 206 Ga. 760, 761 (58 SE2d 832) (1950).

The Concessions Agreement (now expired) granted a five-year term of possession to Aldeasa (but with provision for early termination), and Clayton County notes that this creates a rebuttable presumption that it conveyed a taxable estate for years. See OCGA § 44-7-1 (b); *Macon-Bibb County*, supra, 262 Ga. 119 (a rebuttable presumption exists that a lease for five years or more creates a taxable estate for years). Here, the Concessions Agreement expressly states that it creates a usufruct and passes no estate out of the City. These express terms are not dispositive, however, since the "key inquiry turns upon whether various restrictions in the agreement, limiting [the lessee's] use of the premises, sufficiently negate the presumption that this is an estate for years." *Camp v. Delta Air Lines, Inc.*, 232 Ga. 37, 40 (205 SE2d 194) (1974) (finding

the use restrictions in a 30-year lease were incompatible with an estate for years and rebutted the presumption that the lease created an estate for years). "As in the construction of all agreements, the cardinal rule to be used by the court is that the terms of the instrument itself must be scrutinized to ascertain what interest the parties intended to be conveyed or demised by it." *Allright Parking of Ga. v. Joint City-County Bd. of Tax Assessors*, 244 Ga. 378, 385 (260 SE2d 315) (1979).[3] The terms of the Concessions Agreement include the following restrictions, among others, on Aldeasa's use of the property: the right of the City to terminate the agreement at any time and without cause on 30-days' notice; the right of the City to require Aldeasa to relocate, or to contract or expand its retail space at any time; and the right of the City to retain control of the prices Aldeasa charges for merchandise, Aldeasa's hours of operation, the delivery companies it may use, and the types of cash registers it must use for record-keeping purposes. These terms rebut the presumption that this lease created an estate for years.

---

[3] Additionally, since this case involves a tax dispute and not merely a dispute between the contracting parties, the provisions of the agreement must be objectively scrutinized to determine the legal effect of the agreement, despite its terms stating it creates a usufruct and not an estate in real property. See *Allright Parking*, supra.

Clayton County argues that other terms of the Concessions Agreement are consistent with the creation of an estate for years and not a usufruct, including, among others, the requirement to maintain insurance coverage, and the fact that Aldeasa is prohibited from permitting any liens to be imposed on the premises. According to Clayton County, the prohibition against liens demonstrates the parties intended the Concessions Agreement to create a property interest since it is axiomatic, the County argues, that a lien cannot attach to a usufruct. Just as in the *Allright Parking* case, however, even though certain provisions of the lease agreement may be indicative of an intent to grant an estate for years, we conclude the extensive restrictions on Aldeasa's right to use the premises are fundamentally inconsistent with the concept of an estate for years, and that the Concessions Agreement creates, at most, a usufruct and not a taxable estate for years. Id. at 385. See *City of College Park v. Paradies-Atlanta, LLC*, 346 Ga. App. 63 (2) (815 SE2d 246) (2018); *Clayton County Bd. of Tax Assessors v. City of Atlanta*, 164 Ga. App. 864 (298 SE2d 544) (1982) (holding the 15-year lease of the Atlanta Airport commissary building to a private party conveyed a usufruct and not a taxable estate for years).

2.  *Was an exception to the tax exemption for public property created by statute?* Generally, property owned by a municipality is deemed to be

"public property" that is exempt from ad valorem taxation pursuant to OCGA § 48-5-41 (a) (1) (A). That tax exemption applies to property located outside the territorial limits of the government entity that owns it if certain criteria are met. See OCGA § 48-5-41 (a) (1) (B). The parties agree that the City itself is exempt from Clayton County property taxes for its real property located in that county on which it operates the Atlanta Airport. The County argues, however, that the version of OCGA § 6-3-21 in effect at the time of the tax years at issue in this case disqualified, from that tax exemption, land that was leased to private parties. Prior to its 2014 amendment, OCGA § 6-3-21 (1985) provided that where a municipality owned land outside its territorial limits for the purpose of maintaining an airport, as set forth in OCGA § 6-3-20, and leased the land to private parties,

> the interests created in such private parties, for the purpose of ad valorem taxation only, are declared not to be used for public, governmental, or municipal purposes and said resulting interests, regardless of the extent of such interest, *whether possessory or an estate in land,* are subject to ad valorem taxation . . . .[4]

(Emphasis supplied.) Pursuant to the former language of this statute, Clayton County asserts that regardless of whether the Concessions Agreement created

---

[4] See Ga. L. 1985, p. 1649, § 1.

a taxable estate in real property, it granted Aldeasa a possessory interest that was taxable in the tax years at issue. According to Clayton County, because this statute provided that a lessee's possessory interest in airport land was subject to taxation during the tax years at issue in this case, it may impose ad valorem taxation on the value of Aldeasa's possessory interest in the leased premises.

(a) The trial court concluded that if former OCGA § 6-3-21 were interpreted, as Clayton County urges, to authorize Clayton County to impose a property tax on the usufruct created by the Concessions Agreement, the statute would violate the Georgia Constitution's uniformity of taxation requirement. See Ga. Const. of 1983, Art. VII, Sec. I, Par. III. We agree.

This Court has long held that, with certain exceptions that are not applicable in this case, the uniformity rule for property taxes prohibits the General Assembly from creating different classifications of tangible property and taxing them differently. See, e.g., *Heron Lake II Apts., L.P. v. Lowndes County Bd. of Tax Assessors*, 299 Ga. 598, 609 (791 SE2d 77) (2016); *Griggs v. Greene*, 230 Ga. 257, 264 (2) (197 SE2d 116) (1973). The County stipulated below that the only usufructs or possessory interests that it taxed in the pertinent tax years are those located at the Airport. It also stipulated that other

usufructs exist in Clayton County, including those held by private parties on government-owned property. If the former version of OCGA § 6-3-21 authorized the County to tax only usufructs at the Airport, then the statute would be unconstitutional, and we will not interpret it in that manner if another reasonable interpretation exists. "If a statute is susceptible of more than one meaning, one of which is constitutional and the other not, we interpret the statute as being consistent with the Constitution." *Cobb County School Dist. v. Barker*, 271 Ga. 35, 37 (1) (518 SE2d 126) (1999). See also *Bd. of Public Ed. for the City of Savannah v. Hair*, 276 Ga. 575, 576 (1) (581 SE2d 28) (2003). Likewise, if a usufruct is a separately taxable property interest as Clayton County urges, we note that it would be a violation of the uniformity of taxation requirement to tax some usufructs in Clayton County and not others, since all property within a taxing jurisdiction must be taxed uniformly. See *Griggs*, supra, 230 Ga. at 258 (2).

(b) We agree with the trial court that the relied-upon language of the former version of OCGA § 6-3-21 was never intended to impose property taxes on usufructs at the Airport. That language — that the interests of a private party lessee of a municipality that owns land used as an airport, "*whether possessory or an estate in land,* are subject to ad valorem taxation" — was

added to the statute by a 1983 amendment. Ga. L. 1983, p. 647, § 1. The predecessor to OCGA § 6-3-21 was enacted in 1933, and the original statute simply declared that lands owned or otherwise controlled by a municipality or other political subdivision for the purpose of operating an airport were owned for a public purpose. See Ga. L. 1933, p. 102, § 2. When read in conjunction with the predecessor of OCGA § 48-5-41, this established that land on which a city maintained an airport was exempt from taxation. See Ga. L. 1919, p. 82, § 1. In 1982 the Court of Appeals, in *Clayton County Bd. of Tax Assessors*, supra, 164 Ga. App. 864, held that neither the City of Atlanta nor a private party could be taxed on land the City owned at the Atlanta Airport and leased to that party for operating a business that served the airport, where the lease was deemed to convey a usufruct and not an estate for years. A few months later, the General Assembly passed HB 492 to amend OCGA § 6-3-21. Ga. L. 1983, p. 647, § 1. The amendment struck the former statute in its entirety and substituted new language declaring that, for the purpose of ad valorem taxation, those facilities on municipal-owned airport land that were leased to private parties were not considered to be used for public purposes and that "the resulting interests, regardless of the extent of such interest, whether possessory or an estate in land, are subject to ad valorem taxation . . . ." The language of

former OCGA § 6-3-21 as it existed in tax years 2011 and 2012 did not impose a tax on usufructs at the Airport; it merely stated that certain lease interests were not exempt from taxation.[5]

3.    *Are Aldeasa's rights subject to taxation as a franchise?*  Clayton County also claims Aldeasa's rights under the Concessions Agreement are subject to taxation as a franchise, regardless of whether its rights amount to an estate for years or a usufruct.  We note, however, that the annual notices of assessment to Aldeasa did not purport to tax a franchise interest.  Instead, they described the property being assessed as "real property."  Since franchises are not identified in OCGA § 48-5-3 as taxable real property interests, the notices of assessment do not authorize Clayton County to impose a franchise tax on Aldeasa's rights under the Concessions Agreement.  See *City of College Park*, supra, 346 Ga. App. at 64 (1).

4.    *May Clayton County tax Aldeasa's purported leasehold improvements?*  Finally, we reject Clayton County's assertion that the trial court erred by failing to find that Aldeasa owns taxable leasehold

---

[5] We note that OCGA § 6-3-21 was amended again in 2014 to clarify that the type of lease interests that are not exempt from ad valorem taxation in the circumstances described by that Code section are limited to those that "create an estate in land . . . ."  See Ga. L. 2014, p. 824, § 1/HB 399.

improvements, or that the court improperly failed to address this ground for taxation. Clayton County filed notices of assessment of the purported leasehold improvements on the two parcels involved in the Concessions Agreement, along with the notices of assessment of Aldeasa's purported possessory interests in the parcels. It is undisputed that Aldeasa has paid all applicable taxes on its personal property. The improvements that Clayton County attempts to tax are fixtures to realty. See OCGA § 44-1-2 (a) (2). The trial court properly concluded, however, that Aldeasa held only a usufruct and not an estate in real property. It follows that Aldeasa could not be assessed for leasehold improvements that were not personal property but instead were attached to and passed with the real property it did not own. See *Fulton County Bd. of Assessors v. McKinsey & Co.*, 224 Ga. App. 593, 595 (2) (481 SE2d 580) (1997).

Judgment affirmed. All the Justices concur.

Decided June 18, 2018.

OCGA § 6-3-21; constitutional question. Clayton Superior Court. Before Judge Ison, Senior Judge.

Freeman Mathis & Gary, Arash A. Sabzevari, Jack R. Hancock, for appellant.

Eversheds Sutherland (US), W. Scott Wright, Alla Raykin, for appellee.